Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Asociación de Farmacias de la Comunidad de Puerto Rico<br><br>    Recurrido<br><br><br>    v.<br><br><br>Caribe Specialty; Nova Infusion Compounding Pharmacy; Special Care Pharmacy<br><br>    Peticionarios | Certiorari<br><br>2010 TSPR 204<br><br>179 DPR ____ |

Número del Caso: CC-2009-783


Fecha: 23 de septiembre de 2010


Tribunal de Apelaciones:

        Región Judicial de San Juan

Jueza Ponente:     Hon. Aleida Varona Méndez


Abogados de la Parte Peticionaria:

            Lcdo. Nelson Pérez Domínguez
            Lcdo. Luis A. Ortiz López


Abogados de la Parte Recurrida:

            Lcdo. Carlos M. Declet Jiménez
            Lcda. Arlene D. Villali González


Materia: Violación a la ley de certificados de necesidad y conveniencia, Violación a la nueva ley de farmacia, Violación a la ley de reforma


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

Asociación de Farmacias de
la Comunidad de Puerto Rico

    Recurrido

       v.                              **CC–2009–0783**      Certiorari

Caribe Specialty; Nova Infusion
Compounding Pharmacy; Special
Care Pharmacy

    Peticionarios

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 23 de septiembre de 2010.

En esta ocasión nos corresponde resolver si, conforme a la Ley de Farmacia de Puerto Rico, un paciente puede renunciar a que un medicamento sea entregado por el farmacéutico y poder recibirlo a domicilio a través de personal no farmacéutico.

**I.**

La Asociación de Farmacias de la Comunidad (Asociación) presentó ante la División de Vistas Administrativas del Departamento de Salud una querella contra las farmacias: Nova Infusion & Compounding (Nova Infusion o peticionaria), Special Care Pharmacy (Special Care) y Caribe

Specialty. La Asociación alegó que las farmacias querelladas, de manera separada y en forma conjunta, incurrieron en violaciones a la Ley Núm. 247 de 3 de septiembre de 2004, Ley de Farmacia, y a la Ley Núm. 2 de 7 de noviembre de 1975, conocida como Ley de Certificados de Necesidad y Conveniencia.

La peticionaria Nova Infusion, al igual que Special Care y Caribe Specialty, es una farmacia debidamente autorizada por el Departamento de Salud para brindar servicios farmacéuticos a la comunidad. Ésta se identifica como una "farmacia especializada" por el tipo de servicio que brinda y por dedicarse al despacho de medicamentos para pacientes con enfermedades catastróficas, entre otras enfermedades serias. Entre los servicios que la peticionaria ofrece se encuentra el de entrega rápida de los medicamentos al hogar o lugar de trabajo del paciente. Dicha entrega se realiza a través de carreros o personal técnico que no son parte del personal farmacéutico de dichas farmacias.[1]

Específicamente, los farmacéuticos de la peticionaria se comunican por teléfono con el paciente antes de hacer la entrega. Éstos le preguntan al paciente si desea que el medicamento solicitado le sea entregado por un carrero, aclarándole que éste último no es

---

[1] Del expediente surge que el personal técnico, al cual se le requiere como mínimo un diploma de escuela superior, es adiestrado en el manejo de productos refrigerados, el manejo de los equipos, la estabilidad del medicamento y reciben un entrenamiento administrativo sobre la compañía.

farmacéutico ni auxiliar de farmacia. Si el paciente no consiente la entrega por carrero, se le informa que tiene la alternativa de recoger el medicamento en las facilidades de la farmacia donde un farmacéutico o auxiliar de farmacia será quien le entregará el mismo. Son estos servicios de entrega los que la Asociación impugnó en el Departamento de Salud. Ello sobre el fundamento de que conforme a la Ley de Farmacia, *supra*, la entrega de los medicamentos tiene que ser realizada directamente –persona a persona– entre el farmacéutico y el paciente.

En el transcurso del procedimiento administrativo la Asociación presentó una moción en la que solicitó que se dictara resolución sumaria parcial contra las farmacias querelladas. Así, luego de varios trámites procesales, el Departamento de Salud dictó una Resolución en la que desestimó parcialmente la causa de acción al desestimar las alegaciones respecto a las posibles violaciones a la Ley de Certificados de Necesidad y Conveniencia. El Departamento de Salud determinó que las alegaciones relacionadas con el antecedido estatuto, fueron presentadas tardíamente por no haber sido incluidas en la querella original ni en una enmienda posterior.[2]

---

[2] Es necesario señalar que posteriormente la Oficial Examinadora expresó en el escolio 2 de su informe que la querella que originó el pleito se sostuvo bajo las violaciones de la Ley de Farmacia ante la decisión del Tribunal del Primer Circuito de Apelaciones Federal que determinó –6 meses después de haberse presentado la querella– que la aplicación de la Ley Núm. 2 de 7 de septiembre de 1975, según enmendada, Ley de Certificados de Necesidad y Conveniencia, a las farmacias en Puerto Rico era inconstitucional. Véase, Walgreen Co. v. Rullán, 405 F.3d 50 (1er Cir. 2005).

Así pues, sólo quedaron pendientes de resolver las conductas específicas e individuales de cada una de las farmacias querelladas y que alegadamente constituían violaciones a la Ley de Farmacia, *supra*. Además, en la celebración de la Conferencia con Antelación a la Vista, el Departamento de Salud permitió que se enmendara la querella para incluir la alegación en torno a que las querelladas habían violado el Art. 5.04 (c) de la Ley de Farmacia, *supra*, relacionado al proceso de dispensación y composición de medicamentos estériles para uso parenteral.

Luego de celebradas varias vistas evidenciarias, la Oficial Examinadora preparó un informe en el cual formuló las determinaciones de hechos y concluyó que el mecanismo utilizado para el despacho y la entrega de medicamentos en el que se utiliza un técnico de entrega o carrero es contrario a las disposiciones de la Ley de Farmacia, *supra*. No obstante, en cuanto a los señalamientos respecto a que las farmacias querelladas habían establecido farmacias especializadas, el Departamento de Salud determinó que las querelladas no habían violado la Ley de Farmacia, *supra*. Ello, debido a que la disposición legal que prohíbe anunciarse como servicio "especializado" está dirigida al profesional de farmacia y no a la farmacia en sí.

Además, ante la prueba vertida la Oficial Examinadora concluyó que las querelladas podían continuar

con la composición y dispensación de medicamentos estériles para uso parenteral o cualesquiera otros medicamentos que requirieran técnicas asépticas especiales, siempre y cuando éstas cumplieran con las inspecciones del Departamento de Salud, lo que nunca estuvo en controversia. Conforme al referido informe, el entonces Secretario de Salud, Dr. Johnny V. Rullán, dictó una resolución en la que ordenó a las querelladas a que en el término de 30 días cesaran y desistieran de continuar con la práctica de entrega de medicamentos a sus pacientes por conducto de personal no farmacéutico, tal como carreros, mensajeros o técnicos de entrega.

Inconformes con la resolución administrativa todas las partes acudieron al Tribunal de Apelaciones y presentaron sendos recursos de revisión.[3] La Asociación sustentó sus señalamientos de error en la decisión del Departamento de Salud de resolver que las querelladas no violaron la Ley de Farmacia, *supra*, al establecerse como farmacias especializadas y en los diversos argumentos presentados en relación con la Ley de Certificados de Necesidad y Conveniencia.[4] Por su parte, Nova Infusion y

---

[3] Todos, con excepción de la querellada Caribe Specialty, la cual decidió no participar del procedimiento administrativo luego de que su representación legal renunciara. Así pues, se entendió que ésta renunció tácitamente a su derecho de participar y presentar prueba en su defensa. Además, del informe surge que durante todo el proceso a ésta se le mantuvo informada tanto de los señalamientos como de las decisiones tomadas por el foro administrativo.

[4] En el segundo error la Asociación expuso que el Departamento de Salud erró:

Al desestimar su alegación de que las recurrentes ejercieron las facultades de un certificado de Necesidad y Conveniencia, no autorizado por la Ley y

Special Care señalaron en sus recursos de revisión que el Departamento de Salud erró al emitir una orden de cese y desista contra el servicio de entrega de medicamentos al hogar mediante técnicos de entrega; al interpretar erróneamente el Art. 2.02 (a) 6 de la Ley de Farmacia, *supra*, y por determinar que la entrega de un medicamento por parte de un farmacéutico no puede ser renunciada por un paciente.

Así las cosas, el Tribunal de Apelaciones emitió sentencia disponiendo de ambos recursos, los cuales fueron debidamente consolidados. En torno a los planteamientos de la Asociación, el Tribunal de Apelaciones confirmó la decisión administrativa en cuanto al establecimiento de las llamadas farmacias especializadas. Éste le brindó alta deferencia a las conclusiones e interpretaciones administrativas realizadas por el Departamento de Salud en torno a que la Ley de Farmacia, *supra*, no prohíbe que las farmacias de la comunidad brinden sólo algunos de los servicios a los que están autorizados ni tampoco dirigirlos a una clientela en particular. El tribunal apelativo intermedio entendió que, conforme al expediente, la decisión administrativa no resultaba ser irrazonable por lo que se abstuvo de sustituir el criterio de la agencia por el del

_____

no encontrar violación a las recurrentes al ejercer facultades pertenecientes al certificado de necesidad y Conveniencia, no autorizado por Ley y no encontrar violación de las querellas al ejercer facultades pertenecientes al Certificado de Necesidad y Conveniencia de Servicios en el Hogar "Home Care" sin estar debidamente autorizadas para ello por el Departamento de Salud.

tribunal. En cambio, en lo que respecta a las alegadas violaciones a la Ley de Certificados de Necesidad y Conveniencia señaló que el Departamento de Salud debió permitir la enmienda a las alegaciones, tal como solicitó la Asociación, ello porque tal enmienda no afectaba la pronta adjudicación de la controversia.

Por su parte, en torno a los errores presentados por las farmacias querelladas el Tribunal de Apelaciones confirmó la orden de cese y desista emitida por el Departamento de Salud en la que sostuvo que conforme a la Ley de Farmacia, *supra*, éstas no podían ofrecer a sus pacientes el servicio de entrega de medicamentos mediante carreros o técnicos de entrega. Sin embargo, contrario a lo expuesto por el foro administrativo, el Tribunal de Apelaciones sostuvo que la Ley de Farmacia, *supra*, sí contempla el que los pacientes puedan renunciar a recibir los medicamentos por parte del farmacéutico, ello mediante la designación de un "representante autorizado" y no a través del consentimiento expreso como en la renuncia de la orientación.[5] Dicho tribunal señaló que los referidos representantes autorizados debían ser personas ciertas a quienes los pacientes confiaran la

---

[5] "Cabe señalar que aunque el foro administrativo sostuvo que bajo la Ley de Farmacias, *supra*, el paciente podría designar a un representante autorizado en aquellas circunstancias en que no pueda presentarse físicamente a la farmacia, dicha postura no se sustentó en el reconocimiento de una renuncia por parte del paciente a recibir los medicamentos directamente del farmacéutico, sino en que era la única alternativa en ley mediante la cual se podía disponer que la entrega fuera realizada por un farmacéutico".

función de recibir los medicamentos a su nombre de forma libre y voluntaria, por lo que una renuncia genérica a favor del personal no farmacéutico de las querelladas no cumplía con la Ley de Farmacia, *supra*.

Inconforme con dicha determinación, Nova Infusion presentó una "Moción en auxilio de jurisdicción" mediante la cual nos solicitó la paralización de la referida Orden de cese y desista emitida por el Departamento de Salud –y confirmada por el Tribunal de Apelaciones– hasta tanto atendiéramos el recurso de *certiorari* presentado por ésta el día anterior. En dicho recurso la peticionaria alega que el Tribunal de Apelaciones erró al determinar que ésta no podía "ofrecer a sus paciente el servicio de entrega de medicamentos mediante técnicos de entrega en el lugar designado por el paciente, fundamentándose en una interpretación errónea del Artículo 2.02 (a) 6., de la Ley de Farmacia de 2004". Asimismo, alega que, "[s]e determinó erróneamente que dicho artículo s[ó]lo permite renunciar a la orientación personal por el farmacéutico pero no permite renunciar a la entrega del medicamento por el farmacéutico".

El 23 de septiembre de 2009 declaramos con lugar la "Moción en auxilio de jurisdicción" –paralizando los efectos de la sentencia del Tribunal de Apelaciones– y emitimos una Orden a la Asociación de Farmacias de la Comunidad para que mostrara causa por la cual no debíamos revocar el dictamen recurrido. La Asociación presentó su

escrito en cumplimiento de nuestra orden, y así, con el caso debidamente perfeccionado, procedemos a expedir y resolver el recurso.

## II.

### A.

La Ley Núm. 247 de 3 de septiembre de 2004, según enmendada, conocida como "Ley de Farmacia de Puerto Rico", fue creada con el propósito de promover, preservar y proteger la salud, la seguridad y el bienestar del pueblo puertorriqueño.[6] Con ella, la Asamblea Legislativa plasmó su interés de controlar y reglamentar efectivamente la práctica de la profesión de farmacia, así como el licenciamiento, control y reglamentación de los establecimientos y personas que manufacturan, distribuyen, dispensan y expenden medicamentos y artefactos que se utilizan en el diagnóstico, tratamiento y prevención de enfermedades en Puerto Rico.[7] Este estatuto sustituye la antigua Ley de Farmacia, Ley Núm. 282 de 15 de mayo de 1945, y procura que sus disposiciones sean compatibles con los conceptos y enfoques modernos en la práctica de la profesión de farmacia, en la prestación de servicios farmacéuticos y

---

[6] 20 L.P.R.A. sec. 407 *et seq.*

[7] Art. 1.02 de la Ley de Farmacia, Ley Núm. 247 de 3 septiembre de 2004, 20 L.P.R.A. sec. 407.

en los establecimientos y procesos dedicados a la dispensación de medicamentos.[8]

La Ley de Farmacia, *supra*, establece nuevos esquemas para agilizar y facilitar los procesos y el acceso a los servicios farmacéuticos, adaptándose a la nueva tecnología y velando, a su vez, por el derecho del paciente a la privacidad y a la libre selección de proveedores de servicios farmacéuticos.[9] Además, ante la falta de una descripción satisfactoria de las funciones del farmacéutico en la antigua ley, la Ley de Farmacia de 2004, *supra*, recoge y describe el conglomerado de funciones y responsabilidades del farmacéutico de hoy día.

El referido estatuto dispone que la profesión de farmacia es la profesión de cuidado de la salud que tiene el interés y la responsabilidad social de proveer servicios farmacéuticos a la ciudadanía, en aras de promover la salud, seguridad y bienestar del paciente, prevenir enfermedades y lograr resultados óptimos en el uso de los medicamentos.[10] Así, la Ley de Farmacia, *supra*, destaca la responsabilidad del farmacéutico en la farmacoterapia, y la responsabilidad de velar por una mejor calidad de vida del paciente. Cónsono con esto,

---

[8] Véase, Exposición de Motivos de la Ley de Farmacia.

[9] Véase, Ponencia de los estudiantes del programa Doctoral de la Escuela de Farmacia de la Universidad de Puerto Rico en torno al P. de la C. 4248 de 17 de mayo de 2004, 7ma Sesión Ordinaria, 14ta Asamblea Legislativa, pág. 1.

[10] Art. 2.01 de la Ley de Farmacia, 20 L.P.R.A. sec. 407a.

esta Ley contiene varias disposiciones como lo son aquellas que regulan y especifican las responsabilidades y funciones del farmacéutico y del técnico de farmacia.

Entre estas responsabilidades se encuentra el ejercicio activo del farmacéutico en los procesos de manufactura, almacenaje, distribución y dispensación de medicamentos.[11] En cuanto a esta última responsabilidad –dispensación o despacho de medicamentos– la Ley expone que ésta incluye la entrega y la orientación confidencial, persona a persona, entre el farmacéutico y el paciente o su representante autorizado.[12] Además, la dispensación de medicamentos incluye diversas acciones que ameritan un desempeño cuidadoso y responsable por parte del farmacéutico.

Por ejemplo, específicamente le Ley de Farmacia, *supra*, define la dispensación como "la acción llevada a cabo por el farmacéutico de recibir, verificar, evaluar e interpretar una receta, seleccionar o componer, envasar, rotular y **entregar el medicamento o artefacto al paciente o a su representante autorizado**, incluyendo orientarle y aconsejarle acerca de la utilización adecuada del mismo".[13] (Énfasis suplido.). A tenor con la antecedida definición, el Art. 2.02 inciso (a) añade que el proceso

---

[11] Íd.

[12] Art. 5.02 (l) de la Ley de Farmacia, 20 L.P.R.A. sec. 410a.

[13] Art. 1.03 (i) de la Ley de Farmacia, 20 L.P.R.A. sec. 407.

de dispensar medicamentos y artefactos mediante receta es una de las funciones del farmacéutico, la cual incluye:

1. recibir, evaluar e interpretar la receta;

2. completar la información necesaria en el expediente farmacéutico del paciente;

3. determinar y ofrecer al paciente la posibilidad de intercambio del medicamento por un medicamento bioequivalente de acuerdo con las disposiciones del Artículo 5.03 de esta Ley;

4. preparar o componer, envasar y rotular el medicamento, cumpliendo con las leyes y reglamentos estatales y federales aplicables;

5. verificar la receta con el medicamento y el expediente farmacéutico del paciente, para identificar, prevenir o solucionar problemas relacionados con medicamentos.

6. **entregar el medicamento o artefacto recetado**, luego de haber orientado sobre el mismo al paciente o a su representante autorizado, disponiéndose que la orientación sobre el medicamento conlleva la discusión de la información que a juicio profesional del farmacéutico sea necesaria y significativa para optimizar la farmacoterapia del paciente. **La entrega y orientación se llevará a cabo persona a persona por el farmacéutico, a menos que el paciente renuncie expresamente a recibir la orientación**. La orientación será confidencial y podrá ser complementada, pero no sustituida por información escrita.[14] (Énfasis suplido.)

---

[14] Art. 2.02 (a)(6) de la Ley de Farmacia, 20 L.P.R.A. sec. 407b.

Así pues, el proceso de dispensación culmina con la consumación de la entrega y la orientación. La entrega no se define en la Ley, sin embargo, entendemos que ésta se refiere a la acción del farmacéutico de poner en manos del paciente el medicamento o artefacto recetado. En cambio, la orientación consiste en aconsejar al paciente acerca de la utilización adecuada de dicho medicamento o artefacto entregado.[15] El farmacéutico tiene el deber de discutir la información que, en su juicio profesional, sea necesaria y significativa para optimizar la farmacoterapia del paciente.[16] Por consiguiente, la orientación se llevará a cabo persona a persona entre el farmacéutico y el paciente, de forma oral y confidencial, y podrá ser suplementada, pero no sustituida, por información escrita.[17]

Ahora bien, aunque el farmacéutico es el llamado en ley para realizar ambas funciones, la propia Ley de Farmacia, *supra*, dispone que **el acto de entrega** puede ser delegado a los técnicos de farmacia, contrario a la orientación la cual es una función exclusiva e indelegable del farmacéutico.[18] En otras palabras, la Ley de Farmacia, *supra*, dispone que los técnicos de farmacia,

---

[15] Art. 1.03 (i) de la Ley de Farmacia, 20 L.P.R.A. sec. 407.

[16] Art. 2.02 (a)(6) de la Ley de Farmacia, 20 L.P.R.A. sec. 407b.

[17] Íd.

[18] Véanse, Arts. 1.03 (i), 2.03 y 2.04, 20 L.P.R.A. secs. 407, 407c y 407d.

internos de farmacia o internos de técnico de farmacia podrían intervenir en el proceso de dispensación de medicamentos, el cual incluye la entrega, bajo la supervisión directa del farmacéutico; contrario a la orientación y la verificación de la receta las cuales son funciones exclusivas del farmacéutico.[19]

La orientación sobre el uso y manejo de un medicamento o artefacto es de tal importancia que no sólo es una función indelegable del farmacéutico, sino que el legislador entendió que si el paciente desea renunciar a ella tiene que hacerlo expresamente.[20] Es decir, dicha renuncia deberá constar en documento escrito y con la firma del paciente o su representante autorizado.

Por otro lado, tal y como se expone en la definición del término "dispensación", la entrega y orientación pueden ser realizadas al paciente o a su representante autorizado. Precisamente la Ley de Farmacia, *supra*, define a éste último como el,

> …tutor legal, pariente o persona natural mayor de edad designada e identificada libre y voluntariamente por el paciente, para recibir personalmente en su representación los servicios farmacéuticos, cumpliendo con las leyes y reglamentos aplicables en cuanto a confidencialidad y privacidad de la información de salud protegida del paciente. En el caso de los animales se entenderá como representante o

---

[19] Arts. 1.03 (i) y 5.02 (a), 20 L.P.R.A. secs. 407 y 410a.

[20] Precisamente, el Art. 2.02 inciso (a)(6) expresa que "la entrega y orientación se llevará a cabo persona a persona por el farmacéutico, **a menos** que el paciente **renuncie expresamente a recibir la orientación**". (Énfasis nuestro.) 20 L.P.R.A. sec. 407b.

representante autorizado al portador de la receta.[21]

Así pues, la Ley permite que el paciente pueda designar, libre y voluntariamente, a una persona para que reciba por éste los servicios farmacéuticos. Dicho representante se convierte en un *alter ego* del paciente durante el periodo de su designación, por lo tanto, tal designación deberá cumplir con las leyes y reglamentos aplicables, tanto con aquellas que regulan la privacidad y confidencialidad del paciente como la reglamentación que en su día promulgue el Departamento de Salud al respecto.

Ahora bien, la Ley de Farmacia, supra, no dispone expresamente que la entrega de un medicamento pueda ser realizada por personal no farmacéutico. Por tal razón, la controversia ante nos consiste en determinar si conforme a dicha Ley un paciente puede renunciar a que el farmacéutico sea quien le entregue un medicamento o artefacto recetado y a su vez, si éste puede ser entregado por medio de carreros o técnicos de entrega. Sin embargo, previo a resolver dicha controversia veamos los principios de hermenéutica legal y de revisión administrativa aplicables.

**B.**

Sabido es que toda ley para poder ser aplicada necesita ser interpretada.[22] Ante ello hemos señalado que,

---

[21] Art. 1.03 (zz), 20 L.P.R.A. sec. 407.
[22] Pueblo v. Tribunal Superior, 98 D.P.R. 750, 751 (1970).

"[e]so es así ya sean oscuras o claras las palabras de la ley, por lo que se puede decir que es falso afirmar que sólo las leyes oscuras deben ser interpretadas…".[23] (Citas omitidas.) Así, el proceso de interpretación de las leyes o hermenéutica legal surge como uno que consiste en auscultar, precisar y determinar cuál ha sido la voluntad del legislador.[24]

Este proceso tiene como umbral que "[c]uando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu".[25] De esta forma, cuando la expresión de la ley es clara no hay necesidad de indagar más allá de ella como subterfugio para cumplir con el propósito legislativo.[26] Empero, cuando surgen dudas en torno a la expresión de la ley, el Código Civil establece que se debe tomar en cuenta la voluntad del legislador al momento de interpretarla. Específicamente el Artículo 19 del Código Civil dispone que "[e]l medio más eficaz y universal para descubrir el verdadero sentido de una ley cuando sus expresiones son dudosas, es considerar la razón y espíritu de ella, o la causa o motivos que indujeron al poder legislativo a dictarla."

---

[23] Sucn. Álvarez v. Srio. de Justicia, 150 D.P.R. 252, 274 (2000) citando a R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las Leyes en Puerto Rico, 2da ed. rev., San Juan, Pubs. J.T.S., 1987, Vol. 1, Cap. 34, pág. 259.

[24] Bernier y Cuevas Segarra, op. cit., pág. 259.

[25] Art. 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14.

[26] Romero Barceló v. E.L.A., 169 D.P.R. 460, 476-477 (2006).

Ahora bien, es principio reiterado que "las leyes hay que interpretarlas y aplicarlas en comunión con el propósito social que las inspira, sin desvincularlas de la realidad y del problema humano que persiguen resolver."[27] Por tal razón, éstas no deben ser seguidas ciegamente cuando sus expresiones no caen dentro de su espíritu y fin.[28] Conforme a lo anterior, hemos resuelto que en situaciones en las que exista alguna ambigüedad este Tribunal rechazará una interpretación literal y forzada de un texto legal que produzca un resultado que no puede haber sido el que se intentó por el legislador.[29] Las leyes hay que interpretarlas a luz de las realidades específicas de la sociedad en que operan.[30] En esencia, como dijimos en Pueblo v. Ortega Santiago, 125 D.P.R. 203, 214 (1990):

> "Los tribunales estamos autorizados a *interpretar* las leyes cuando, entre otras, éstas no son claras o concluyentes sobre un punto en particular; cuando el objetivo, al realizarlo, es el de suplir una laguna en la misma; o cuando, con el propósito de mitigar los efectos adversos de la aplicación de una ley a una situación en particular, la justicia así lo requiere."

Por su parte, es un principio fundamental en la hermenéutica legal que las leyes deben ser consideradas

---

[27] Pueblo v. Zayas Rodríguez, 147 D.P.R. 530, 537 (1999); Departamento de Hacienda v. Telefónica, 164 D.P.R. 195, 214 (2005); Col. Ing. Agrim. P.R. v. A.A.A., 131 D.P.R. 735, 756 (1992).

[28] Sucn. Álvarez v. Srio. de Justicia, *supra*; Pueblo v. Zayas Rodríguez, *supra*, pág. 538.

[29] Pueblo v. Zayas Rodríguez, *supra*, pág. 538.

[30] Departamento de Hacienda v. Telefónica, *supra*, pág. 215; Pueblo v. Zayas Rodríguez, *supra*, pág. 551.

como un todo para determinar el significado de cada una de sus partes.[31] Las diferentes secciones deben interpretarse, las unas en relación con las otras, y así se puede completar o suplir cualquier falta u oscuridad de una con lo dispuesto en la otra, procurando siempre dar cumplimiento a la intención legislativa.[32] Las leyes no pueden interpretarse tomando aisladamente sus disposiciones o secciones, sino que deben considerarse todas en conjunto, es decir, íntegramente y no de forma fraccionada.[33] Por consiguiente, "[p]ara interpretar correctamente una ley, debe buscarse la intención legislativa, no en una frase aislada o en una de sus secciones, sino en el contexto de todo el estatuto, teniendo en cuenta el propósito perseguido por el legislador".[34] Con ello, se intenta evitar que al interpretar un estatuto se obtengan conclusiones o interpretaciones que carezcan de lógica jurídica o sentido de justicia. Así pues, "al ejercer nuestra función interpretativa, estamos obligados a armonizar, en la medida posible, todas las disposiciones de ley involucradas en aras de obtener un resultado más sensato, lógico y razonable".[35]

---

[31] Bernier y Cuevas Segarra, op. cit., pág. 315.

[32] Íd.

[33] Álvarez & Pascual, Inc. v. Srio. Hacienda, 84 D.P.R. 482, 489-490 (1962); Descartes, Tes. V. Tribl. Contrib. y Sucn. Cautiño, 71 D.P.R. 248, 253 (1950).

[34] Pueblo v. De Jesús, 70 D.P.R. 37, 42 (1949).

[35] Sucn. Álvarez v. Srio. de Justicia, supra, pág. 276.

## C.

Es norma firmemente establecida que los tribunales apelativos deben conceder gran deferencia a las decisiones emitidas por las agencias administrativas, debido a la vasta experiencia y conocimiento especializado que les han sido encomendados.[36] Por consiguiente, la revisión judicial de una decisión administrativa suele comprender tres áreas: "(1) la concesión del remedio apropiado; (2) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial; y (3) la revisión completa y absoluta de las conclusiones de derecho".[37]

En torno a las determinaciones de hecho que formule una agencia, hemos reconocido que los tribunales, utilizando un criterio de razonabilidad y deferencia, no alterarán o intervendrán con éstas siempre que surja del expediente administrativo evidencia sustancial que las sustente.[38]

_____

[36] Martínez v. Rosado, 165 D.P.R. 582, 589 (2005); Otero v. Toyota, 163 D.P.R. 716, 727 (2005); Pacheco v. Estancias, 160 D.P.R. 409, 431 (2003).

[37] Mun. de San Juan v. J.C.A., 149 D.P.R. 263, 279-280 (1999); Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2175

[38] Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2175; Íd.

Por otro lado, las conclusiones de derecho pueden ser revisadas en todos sus aspectos.[39] Sin embargo, esto no significa que lo tribunales, al ejercer su función revisora, puedan descartar libremente las conclusiones e interpretaciones de derecho de las agencias y sustituir el criterio de éstas por el propio.[40] Dichas conclusiones e interpretaciones de derecho pueden producirse ya sea en la aplicación que la agencia haga del derecho a los hechos básicos que se han determinado o en torno a su facultad de interpretar su propia ley, estatuto o reglamento. Así, en muchas de estas instancias el conocimiento especializado de la agencia es pieza fundamental. Por lo tanto, en el descargo de su función revisora, los tribunales apelativos deberán distinguir entre cuestiones de interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias de la discreción o pericia administrativa.[41]

Ahora bien, la reconocida deferencia judicial cede cuando la actuación administrativa es irrazonable o

---

[39] Íd.; Martínez v. Rosado, supra; Otero v. Toyota, supra, pág. 729; Pacheco v. Estancias, supra, pág. 432.

[40] Martínez v. Rosado, supra; Otero v. Toyota, supra.

[41] Rebollo v. Yiyi Motors, 161 D.P.R. 69, 78 (2004); Adorno Quiles v. Hernández, 126 D.P.R. 191, 195 (1990). El profesor Demetrio Fernández señala que, "[s]ólo cuando las agencias administrativas estén diseñando cuestiones de hecho o de política pública altamente técnica es que se determina que las agencias se encuentran mejor equipadas para hacer la decisión que interpreta la ley. Empero, […]el hecho de la especialización o el manejo de cuestiones técnicas no es una carta en blanco para que se actúe en forma caprichosa, arbitraria e irrazonable.". D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., Colombia, Ed. Forum, 2001, pág. 560. Véase, South Puerto Rico v. Junta Azucarera, 82 D.P.R. 847 (1965).

ilegal y ante interpretaciones administrativas que conduzcan a la comisión de injusticias.[42] Asimismo, un tribunal puede revisar la actuación de la agencia en instancias donde el organismo administrativo ha errado en la aplicación de la ley.[43] Por su parte, aunque reiteradamente hemos reconocido que la interpretación que una agencia realiza sobre la ley que administra y custodia merece gran respeto y deferencia por parte de los tribunales, dicha deferencia cede cuando la interpretación de la agencia produce resultados incompatibles o contrarios al propósito del estatuto interpretado y a su política pública.[44]

### III.

El Art. 2.02 (a) (6) de la Ley de Farmacia, *supra*, dispone que "[l]a entrega y orientación se llevará a cabo persona a persona por el farmacéutico, a menos que el paciente renuncie expresamente a recibir la orientación".[45] Por lo visto, dicha disposición comienza haciendo alusión a la entrega y la orientación y luego, en la parte final, sólo menciona la orientación. Es este "silencio", que consiste en no mencionar la entrega en la

---

[42] Pacheco v. Estancias, *supra*, pág. 433; Asoc. Vec. H. San Jorge v. U. Med. Corp., *supra*, pág. 76; Com. Vec. Pro-Mej., Inc. v. J.P., 147 D.P.R. 750, 761 (1999).Costa, Piovanetti v. Caguas Expressway, 149 D.P.R. 881, 889 (1999).

[43] Rebollo v. Yiyi Motors, *supra*; Reyes Salcedo v. Policía de P.R., 143 D.P.R. 85 (1987).

[44] Martínez v. Rosado, *supra*; Pacheco v. Estancias, *supra*, pág. 433; Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 D.P.R. 70, 75 (2000);.Costa, Piovanetti v. Caguas Expressway, *supra*.

[45] 20 L.P.R.A. sec. 407b.

segunda parte de la disposición, el que los foros inferiores interpretaron y que en esta ocasión nos corresponde revisar.

En el foro administrativo, la Oficial Examinadora determinó en su informe, luego de reconocer dos renuncias —a la orientación y a la entrega personal— que según la Ley de Farmacia, *supra*, la entrega del medicamento por parte de un farmacéutico no podía ser renunciado por el paciente.[46] Señaló que conforme al referido artículo sólo la orientación puede ser renunciada, por lo que la única alternativa que ofrece la Ley en las circunstancias de que un paciente no pueda presentarse físicamente a la farmacia, es la utilización de un representante autorizado. La decisión administrativa sostuvo específicamente que el servicio de recibir un medicamento en el hogar o en el lugar de trabajo, "aunque pueda ser una comodidad que facilite el servicio, no puede darse, bajo las disposiciones de la Ley… tal y como está vigente, mediante un carrero".[47] Además, señaló que no había otra interpretación del estatuto que no fuera que el legislador sólo permitió la renuncia a la orientación.

Por su parte, el Tribunal de Apelaciones le brindó gran deferencia a la conclusión hecha por el foro administrativo por entender que era razonable. Sostuvo que la Ley de Farmacia, *supra*, sólo contempla la renuncia expresa a la orientación y no a la entrega. Señaló que

---

[46] Véase, Informe de la Oficial Examinadora, págs. 27-28.

[47] Íd., pág. 28.

ésta última sólo podría renunciarse mediante el nombramiento de un "representante autorizado", el cual, según las disposiciones de la Ley, debe ser una persona cierta a quien el paciente le haya confiado dicha función de manera libre y voluntaria. Así pues, éste entendió que una "renuncia genérica a favor del personal de las farmacias de las recurrentes no cumple con la letra clara de la Ley de Farmacia", por lo que los técnicos de entrega no eran representantes autorizados y por ende, no podían entregar medicamentos.

Ante ello, inicialmente debemos determinar si los técnicos de entrega de la peticionaria hacen la función de representantes autorizados. Entendemos que no. La Ley de Farmacia, *supra*, establece que el representante autorizado es aquel tutor legal, pariente o persona natural mayor de edad designada e identificada por el paciente para recibir en su lugar los servicios farmacéuticos. En el caso de Nova Infusion, cuando el paciente consiente a que un técnico de entrega o carrero le entregue el medicamento en el lugar designado, no se cumple con el requisito de designar e identificar a la persona que va a fungir como tal. Así, tal como resolvió el Tribunal de Apelaciones una renuncia genérica por parte del paciente no convierte a tales correros en sus representantes. Más aun, palmariamente dicha designación implica la colocación de uno en el lugar del otro, por tal razón, la Ley exige que ésta cumpla con las leyes y

reglamentos que regulan la privacidad y confidencialidad del paciente, así como con la reglamentación que al efecto promulgue el Departamento de Salud. Así, como no surge del expediente que los referidos técnicos de entrega o carreros, los cuales sólo sirven de intermediarios entre el paciente y el farmacéutico, hayan sido identificados y designados por el paciente, éstos no pueden ser considerados como representantes autorizados.

Ahora bien, ¿un paciente puede renunciar a que sea el farmacéutico el que le entregue un medicamento y acogerse a un servicio de entregas a domicilio, sin la necesidad de designar a un representante autorizado? Entendemos que sí. La interpretación que los foros inferiores realizaron del Art. 2.02 (a) (6) no nos parece razonable, además de muy restrictiva y en contravención del propósito social perseguido por la Ley. Si bien es cierto que el referido artículo guarda silencio en torno a la renuncia de la entrega, éste no debe ser tomado como una prohibición de ésta. Veamos.

Al analizar la Ley de Farmacia, *supra*, en su totalidad observamos que ésta procura ser compatible con la práctica moderna de la profesión de farmacia y con los "cambios dramáticos en las modalidades de prestación" de los servicios farmacéuticos.[48] Por tal razón, en el caso particular ante nos, sostener que el silencio del legislador en torno a la renuncia de la entrega significa

---

[48] Véase, Informe de la Comisión de Gobierno de la Cámara de Representantes sobre el P. de la C. 4248 de 11 de noviembre de 2003, 6ta Sesión Ordinaria, 14ta. Asamblea Legislativa, pág. 2.

una prohibición de ésta, contraviene los fines prácticos buscados por el legislador.

Por ejemplo, como ya hemos visto, claramente la orientación es una función indelegable del farmacéutico y es por medio de ésta que dicho profesional aconseja al paciente sobre la utilización adecuada de un medicamento o artefacto recetado. Sin embargo, si bien ésta es una función sumamente importante en la farmacoterapia del paciente, el legislador entendió pertinente que el paciente pudiera renunciar a dicha orientación a través de una renuncia expresa. Por consiguiente, no resulta razonable concluir que la Ley de Farmacia, *supra*, permita renunciar a uno de los aspectos fundamentales e indelegables de la profesión de farmacia como lo es la orientación al paciente, y que no se le permita a ese mismo paciente renunciar a la entrega y que un técnico de entregas o carrero le entregue el medicamento en su lugar de conveniencia. Ello no sería cónsono con el hecho de que la propia Ley de Farmacia, *supra*, le permite al paciente incluso designar un representante que sirva de *alter ego* suyo para recibir los servicios farmacéuticos y que actúa como si fuera el paciente y, por ende, puede renunciar tanto a la orientación como a la entrega.

Además, una interpretación tan rígida como las realizadas por los foros recurridos tiene el efecto de perjudicar principalmente al paciente. No sólo se limita el acceso a los servicios farmacéuticos, sino que también

se pone en riesgo el tratamiento y acceso farmacológico de aquellos pacientes que sufren enfermedades catastróficas, críticas o serias. Los foros inferiores sostuvieron que la única alternativa que tiene un paciente para no recibir el medicamento directamente del farmacéutico es nombrar un representante autorizado. Sin embargo, ello dejaría sin opciones a aquellos pacientes que por diversas razones no puedan conseguir a una persona que funja como su representante. Al mismo tiempo, sería perjudicial para el paciente que por motivos de privacidad no desee designar a un representante y prefiera que le entreguen el medicamento en su hogar o trabajo.

Por su parte, aunque la Ley de Farmacia, *supra*, es un estatuto dirigido a regular dicha profesión, no debemos perder de perspectiva que tal y como señala la propia Ley en su Exposición de Motivos, el propósito de ésta es "promover y proteger la salud, la seguridad y el bienestar público." Basado entonces en lo que es la intención expresa del legislador, al interpretar la ley de la forma que lo estamos haciendo, atendemos las implicaciones prácticas o perjudiciales que dicha interpretación pueda ocasionar en los derechos de los pacientes.

De igual forma, es importante señalar que la Ley de Farmacia, *supra*, reconoce en su Art. 1.02 que sus disposiciones no regulan ni afectan de modo alguno lo

referente al envío de medicamentos a Puerto Rico desde los Estados Unidos o algún país extranjero. Ante ello, sería absurdo sostener que la Ley prohíba la entrega de medicamentos a través de técnicos de entrega o carreros y por otro lado permita la entrega de medicamentos por correo.

Del expediente surge que la práctica de la farmacia Nova Infusion es que inicialmente los farmacéuticos se comunican con el paciente y le presentan las opciones que tienen para obtener sus medicamentos. Si el paciente elige el servicio de entrega, entonces proceden a hacer la entrega a través de carreros al lugar que éste elija. En dicha comunicación se le explica al paciente que la persona que le hará la entrega no es farmacéutico ni técnico de farmacia y se le brinda toda la información relacionada con el medicamento. Además, de no consentir a la entrega, el paciente siempre tiene la opción de ir personalmente a la farmacia.

Por consiguiente, el servicio antecedido no viola la Ley de Farmacia, *supra*, siempre que no sea requerido como condición y que haya autorización expresa por escrito del paciente. Ello, porque si el paciente no realiza la referida renuncia, mediante un consentimiento expreso, el farmacéutico sólo puede delegar la función de entrega a los funcionarios expresamente dispuestos en la Ley. Precisamente, los Arts. 5.02 (a) y 1.03 (i) señalan que el farmacéutico sólo puede delegar la función de entregar

un medicamento a cierto personal especializado. Sin embargo, nuestra determinación en el caso de autos no significa que hemos modificado o trastocado las funciones del farmacéutico, más bien, sólo hemos reconocido que el paciente tiene un derecho a renunciar a que sus medicamentos sean entregados por personal farmacéutico y puedan ser entregados por otro tipo de personal siempre que reciba la orientación correspondiente del farmacéutico y autorice su entrega expresamente.

Así, aunque generalmente la interpretación que una agencia hace sobre la ley que administra merece gran deferencia, en circunstancias como las presentes, en la cual la interpretación del Departamento de Salud es incompatible con la Ley de Farmacia, *supra*, y su política pública, sustituimos su criterio por el aquí expuesto.

En síntesis, al interpretar el Art. 2.02 (a) (6) de la Ley de Farmacia, *supra*, en conjunto con las demás disposiciones de ésta, es forzoso concluir que nada en dicho artículo prohíbe que un paciente pueda renunciar a que sea el farmacéutico el que le entregue un medicamento y acogerse a un servicio de entrega a domicilio. Además, ello se sustenta en los propósitos perseguidos por el legislador y en nuestra obligación de armonizar, en la medida que sea posible, las disposiciones de la ley.

Por todo lo anterior, dejamos sin efecto la orden de cese y desista emitida por el Departamento de Salud en el presente caso. Empero, ello no significa que el

Departamento de Salud no pueda, dentro de su poder de reglamentación y enmarcado en lo que establece la Ley de Farmacia, *supra*, conforme la hemos interpretado en el caso de autos, reglamentar el proceso de renuncia, los requisitos que los técnicos deban poseer, el debido manejo del medicamento, así como cualquier otro criterio que estime pertinente.

## IV.

En armonía con lo antes señalado, se expide el recurso de *Certiorari*, se revoca la Sentencia del Tribunal de Apelaciones y se deja sin efecto la orden de cese y desista emitida por el Departamento de Salud en el presente caso.

Se dictará Sentencia de conformidad.


                                    Erick V. Kolthoff Caraballo
                                          Juez Asociado

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Asociación de Farmacias de
la Comunidad de Puerto Rico

  Recurrido


    v.                                CC-2009-0783


Caribe Specialty; Nova Infusion
Compounding Pharmacy; Special
Care Pharmacy

     Peticionarios


**SENTENCIA**

San Juan, Puerto Rico, a 23 de septiembre de 2010.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se expide el recurso de *Certiorari*, se revoca la Sentencia del Tribunal de Apelaciones y se deja sin efecto la orden de cese y desista emitida por el Departamento de Salud en el presente caso.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez disiente con opinión escrita.


                   Aida Ileana Oquendo Graulau
                Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Farmacias de la
Comunidad de Puerto Rico

    Recurrida

       v.                        CC-2009-783

Caribe Specialty; Nova
Infusion Compounding Pharmacy;
Special Care Pharmacy

    Peticionaria

Opinión disidente emitida por la Juez Asociada señora Rodríguez Rodríguez

      San Juan, Puerto Rico, a 23 de septiembre 2010

      El resultado a que llega la mayoría del Tribunal es simpático y conveniente pero ajeno al texto legislado. Para llegar a ese resultado la mayoría ha enmendado, mediante *fiat* judicial, la Ley de Farmacias de Puerto Rico, Ley núm. 247 de 3 de septiembre de 2004. 20 L.P.R.A. secs. 407 et seq. Más que una interpretación para suplir un alegado "silencio" en el texto legislativo, el resultado adoptado en la ponencia desatiende lo expresamente dispuesto en el texto legislativo. Además, al adoptar una nueva forma de despachar medicamentos, el Tribunal trastoca el cuidadoso esquema establecido por el legislador en la Ley de Farmacia

para garantizar la seguridad y la salud pública de los ciudadanos.

Amparándose en el propósito modernizador que motivó la adopción de la Ley de Farmacia, la ponencia avala un mecanismo alterno de entrega de medicamentos claramente ajeno al esquema de dispensación que el legislador estableció en esa ley.

Ciertamente, la Ley de Farmacia se adoptó con el propósito de implantar una legislación atemperada a las prácticas modernas. No obstante, ello no autoriza a los establecimientos farmacéuticos a optar por nuevas prácticas que surjan en la industria o el mercado, que sean ajenas al esquema establecido en el referido estatuto.

A diferencia de lo afirmado en la ponencia, la controversia ante nuestra consideración no se limita a resolver si el paciente tiene o no la facultad de renunciar a la entrega personal del medicamento de parte del farmacéutico. La Ley de Farmacia no constituye sólo una carta de derechos del paciente. Constituye un cuerpo estatuario cuyo propósito –además de salvaguardar, la salud, derechos y prerrogativas del paciente– **es regular la profesión de farmacia así como la dispensación de medicamentos** promoviendo "la salud, la seguridad y el bienestar público mediante el **control y reglamentación** efectivo de la **práctica de farmacia**" y de los establecimientos que dispensan y expenden medicamentos. (Énfasis nuestro.) Artículo 1.02 de la Ley de Farmacia. Leyes de Puerto Rico, 2004, parte 2, pág. 1808-1809.

Para ello el legislador adoptó aquellas "disposiciones esenciales compatibles con los conceptos y enfoques modernos en la regulación de la profesión de farmacia. . .". Exposición de Motivos de la Ley de Farmacia. *Íbid,* pág. 1808. Véase además, Informe sobre el Proyecto de la Cámara 4248, 11 de noviembre de 2003.

En su interés de controlar y regular el dispendio de medicamentos, el legislador estableció detalladamente las funciones del farmacéutico así como el proceso para el despacho de medicamentos por parte de éste. El legislador no sólo estableció claramente que al farmacéutico le compete la entrega del medicamento, artículo 2.02 de la Ley de Farmacia, 20 L.P.R.A. sec. 407b(6), sino que dispuso, en el artículo 5.02 20 LPRA sec. 410a del citado estatuto, que: **"Todo medicamento de receta será dispensado solamente por un farmacéutico en una farmacia registrada y autorizada por el Secretario para operar como tal . . .."** (Énfasis suplido.) Este texto es, a mi juicio, meridianamente claro al establecer cómo el farmacéutico dispensa los medicamentos y sobre esto, nada tiene que decir el paciente. *Cf., Piovanetti García v. Touma*, res. 22 de abril de 2010, 2010 TSPR 61, 178 D.P.R. ___ (2010) ("Es principio reiterado que 'cuando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu.' De esta forma, cuando el texto de la ley es claro e inequívoco, esta es la expresión por excelencia de la intención legislativa.").

La conveniencia de prácticas alternas resulta insuficiente para alterar el esquema adoptado por el legislador cuando la práctica que se adopta choca con el propósito del legislador de controlar y reglamentar la práctica de farmacia y el dispendio de medicamentos en protección de la seguridad y la salud pública. La ponencia no considera ni examina en detalle, las consecuencias que implica para la seguridad y salud pública avalar una práctica de dispendio de medicamentos que trastoca el sistema específico y detallado que adoptó la Asamblea Legislativa en la Ley de Farmacia. Considero que la ponencia no le infunde contenido a una disposición general ni suple un vacío estatutario, sino que incorpora en el estatuto una práctica extraña al esquema vigente.

Aun cuando considero conveniente el mecanismo para la entrega de medicamentos adoptado por la mayoría, no puedo prestarle mi anuencia. Primero, porque la ley ya dispone cómo ello se hace y no existe laguna que suplir. Por otro lado, aunque considero loable el esfuerzo de la mayoría de contemporizar la Ley de Farmacia para hacerla más responsiva a la realidad social actual, el mecanismo que se adopta es extraño al esquema legislativo vigente y su incorporación por vía judicial coloca en riesgo los principios tutelados por la Ley de Farmacia de seguridad y salud pública.

Por los fundamentos antes expresados disiento del criterio mayoritario.

Anabelle Rodríguez Rodríguez
Juez Asociada