ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| JOSÉ A. SÁNCHEZ ROA<br><br>**RECURRENTE**<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>**RECURRIDA** | KLRA202400026 | Revisión administrativa procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm. ICG-1918-2023<br><br>Sobre: SUSPENSIÓN DE VISITA |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

Grana Martínez, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 20 de febrero de 2024.

La parte recurrente, José A. Sánchez Roa, comparece ante nos mediante un recurso de revisión administrativa. En el mismo, solicita la revocación de una determinación administrativa emitida por del Departamento de Corrección y Rehabilitación el 29 de diciembre de 2023, notificada el 4 de enero de 2024. Mediante el referido dictamen, el organismo recurrido le indicó al señor Sánchez Roa que no tenía jurisdicción sobre las medidas que se imparten como sanciones disciplinarias colectivas.

Los antecedentes que permiten entender el curso de acción que hoy tomamos se incluyen a continuación.

### I.

El señor Sánchez Roa es miembro de la población correccional bajo la custodia del Departamento de Corrección y Rehabilitación (Departamento). Actualmente se encuentra recluido en la Institución Correccional Guerrero de Agudilla, en el Módulo 8-B-II.

Surge del expediente que, el 13 de noviembre de 2023, se realizó un registro en el referido módulo, mediante el cual se incautaron varios artículos de contrabando. Ante ello, los

Número Identificador

SEN2024_____

Superintendentes de la referida institución, Claudio Cortés Meléndez y Marguerite García Mestre, aplicaron la Regla 9 del Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional, Reglamento Núm. 9221 de 8 de octubre de 2020, y les suspendieron los privilegios siguientes a los confinados del mencionado módulo por un periodo de diez (10) días:

1. Paquetes;

2. Comisaría;

3. Participación de actividades especiales;

4. Recreación;

5. Correspondencia, exceptuando la legal;

6. **Visitas, a excepción de su abogado o representante de la agencia),** y

7. Cualquier otro privilegio que se le conceda en la institución.[1]

En desacuerdo, el 4 de diciembre de 2023, el recurrente presentó una solicitud de remedio administrativo, la cual fue recibida por el Oficial Examinador el 29 del mismo mes y año. En la misma, planteó que el Departamento no tenía facultad para cancelar el privilegio de visitas como sanción disciplinaria colectiva.

Así las cosas, el 20 de diciembre de 2023, los Superintendentes les informaron a los confinados del Módulo 8-B-II que, según solicitado, el Oficial Examinador, como medida de seguridad, había extendido la suspensión de privilegios por un periodo adicional de veinte (20) días.

El 29 de diciembre de 2023, la División de Remedios Administrativos respondió a la solicitud del señor Sánchez Roa. Aseveró que no tenía jurisdicción sobre sanciones disciplinarias colectivas que se imparten al amparo de la Regla 9 del Reglamento Núm. 9921, *supra.*

---

[1] Anejo I del recurso.

Inconforme, el 11 de enero de 2024, el recurrente suscribió este recurso.[2] Esencialmente, nos solicita que ordenemos al organismo recurrido a abstenerse de imponer la cancelación de visitas como medida disciplinaria colectiva, puesto que, presuntamente, va en contra de lo dispuesto por el ordenamiento jurídico vigente.

Habiendo examinado el expediente que nos ocupa, y con el beneficio de la posición del Departamento, procedemos a delimitar el trasfondo normativo aplicable.

**II.**

**A. Deferencia Judicial a las Resoluciones Administrativas**

Las determinaciones de las agencias administrativas están sujetas a la revisión judicial del Tribunal de Apelaciones. La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico autoriza expresamente la revisión de las decisiones, órdenes y resoluciones finales de los organismos administrativos. La revisión judicial tiene el objetivo de asegurar que las agencias actúen conforme a las facultades concedidas por ley. Los tribunales revisores debemos conceder deferencia a las decisiones de las agencias, debido a su experiencia y conocimiento especializado sobre los asuntos ante su consideración. Los dictámenes de las agencias gozan de una presunción de legalidad y corrección que subsiste, mientras no se produzca suficiente prueba para derrotarla. *OEG v. Martínez Giraud,* 210 DPR 79, 88-89 (2022); *AAA v. UIA*, 200 DPR 903, 910 (2018).

La parte que impugna judicialmente las determinaciones de hechos de una agencia tiene el peso de demostrar que no están basadas en el expediente o que las conclusiones del foro administrativo son irrazonables. La razonabilidad es el criterio

---

[2] Finalmente, presentado el 18 de enero de 2024.

rector al momento de pasar juicio sobre la decisión de una agencia. La revisión judicial está limitada a evaluar si la agencia actuó arbitraria, ilegalmente, de forma irrazonable o abusó de discreción. *OEG v. Martínez Giraud, supra,* a la pág. 89; *González Segarra et al v. CFSE,* 188 DPR 252, 277 (2013); *Otero v. Toyota,* 163 DPR 716, 728 (2005); *Rebollo v. Yiyi Motors,* 161 DPR 69, 76-77 (2004).

La evidencia sustancial en la que debe estar basada la determinación administrativa, ha sido definida jurisprudencialmente como aquella que es relevante y que una mente razonable podría aceptar como adecuada para sostener una conclusión. Sin embargo, esta aceptación no podrá estar sostenida por un ligero destello de evidencia o por simples inferencias. Las determinaciones de derecho de las agencias son revisables en todos sus aspectos. *OEG v. Martínez Giraud, supra,* pág. 90.

La revisión se ciñe a determinar si: (1) el remedio concedido por la agencia fue el apropiado, (2) las determinaciones de hecho de la agencia están basadas en evidencia sustancial que obra en el expediente administrativo y (3) las conclusiones de derecho fueron correctas. Respeto a la resolución administrativa se sostiene hasta que no se presente evidencia suficiente para derrotar la presunción de legalidad. *OEG v. Martínez Giraud, supra,* pág. 90.

La deferencia a la interpretación que las agencias hacen sobre las leyes que le corresponde poner en vigor, cede cuando: 1) erró al aplicar la ley, 2) actuó arbitraria, irrazonable o ilegalmente o 3) lesionó derechos constitutivos fundamentales. El criterio administrativo no prevalece, cuando la interpretación estatutaria que realiza la agencia provoca un resultado incompatible o contrario al propósito para el cual se aprobó la legislación y con la política pública promovida. *OEG v. Martínez Giraud, supra.* a la pág. 91. *Asoc. Fcias. v. Caribe Specialty et al. II,* 179 DPR 923, 940 (2010);

*Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35-36 (2018); *Otero v. Toyota, supra.*

**B. Solicitudes de remedios Administrativos Radicadas por la Población Correccional**

La División de Remedios Administrativos (División) fue creada para que toda persona recluida en una institución correccional disponga de un organismo administrativo, en primera instancia, ante el cual pueda presentar una solicitud de remedio, con el fin de minimizar las diferencias entre los miembros de la población correccional y el personal, y para evitar o reducir la radicación de pleitos en los tribunales de justicia. Introducción del Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por la Población Correccional, Reglamento Núm. 8583 del 4 de mayo de 2015. Así, pues, la referida división podrá atender toda solicitud presentada por una persona sumariada relacionada a cualquier incidente que afecte su plan institucional directa o indirectamente. *Vargas Serrano v. Inst. Correccional,* 198 DPR 230, 243 (2017).

El Reglamento Núm. 8583*, supra,* define la solicitud de remedio como un recurso que presenta un miembro de la población correccional relacionado a su confinamiento, y que afecte su calidad de vida y seguridad. Regla IV (24). Habida cuenta de ello, la División tiene jurisdicción para atender cualquier acto que afecte personalmente al confinado en su bienestar físico, mental, en su seguridad mental o plan institucional. *Íd.,* Regla VI (a).

**C. Reglamento Disciplinario para la Población Correccional**

Sabido es que las prisiones son lugares de cautiverio involuntario de personas que no han sido capaces de ajustarse a las normas de convivencia pacífica y ordenada. Por ello, y para asegurar la protección de las personas que trabajan en las instituciones carcelarias, es necesario que se tomen rigurosas medidas de

seguridad. *Pueblo v. Falú Martínez,* 116 DPR 828, 836 (1986). En virtud de lo anterior, se aprobó el Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional, Reglamento Núm. 9221 de 8 de octubre de 2020, con el propósito de mantener un ambiente de seguridad y orden en las instituciones penales. El Reglamento establece un mecanismo flexible y eficaz para imponer medidas disciplinarias a los confinados que incurran en violaciones a las normas y procedimientos establecidos en la institución.

En lo pertinente al caso de marras, la Regla 16 del referido cuerpo normativo incluye una lista de los actos prohibidos de Nivel II de severidad, en la cual se incluye el contrabando. El mismo, se define como:

> [l]a posesión de artículos o materiales considerados no peligroso, que no sean suministrados o autorizados por el Departamento de Corrección y Rehabilitación. También se considera contrabando aquellos artículos en exceso de los permitidos en el área de vivienda, tales como los artículos de consumo, o cualquier otro establecido por el Departamento de Corrección y Rehabilitación, excluyendo aquellos tipificados como contrabando peligroso.

Reglamento Núm. 9921, *supra.*

El confinado que comete un acto prohibido puede ser sancionado con la privación de sus privilegios, que incluyen la participación en actividades especiales, recreación activa, compra en la comisaría, visitas y cualquier otro remedio que se conceda en la institución. *Íd.,* Regla 17 (5). Los referidos privilegios pueden ser suspendidos sin la celebración de una vista administrativa en circunstancias que pongan en riesgo la seguridad institucional. Sin embargo, la suspensión no podrá exceder de un periodo de diez días. Regla 9 (2) del Reglamento Núm. 9921, *supra.*

Ahora bien, queda prohibido que se suspenda el privilegio de visitas a un grupo, unidad de vivienda, edificio o institución como medida disciplinaria. Se podrá suspender dicho privilegio si

responde estrictamente a una medida de seguridad. Regla 9 (2) del Reglamento Núm. 9921, *supra.* Una de las circunstancias que el Reglamento considera necesario aplicar una medida de seguridad es ante el hallazgo de contrabando peligroso o cualquier material prohibido por ley o reglamento. *Íd.,* Regla 9(3)(d).

**III.**

El recurrente plantea que el Departamento no podía imponer la cancelación de visitas como medida disciplinaria colectiva. Luego de haber repasado el derecho aplicable a la controversia de autos, resolvemos que no le asiste la razón al señor Sánchez Roa.

Según reseñamos, a pesar de que el Reglamento 9221, *supra,* establece que en ninguna circunstancia se cancelará el privilegio de visitas a un grupo como medida disciplinaria, el mismo se podrá suspender si responde a una medida de seguridad. El Reglamento específicamente dispone que se justifica imponer la referida medida de seguridad cuando se encuentre contrabando peligroso o cualquier material prohibido.

En el presente caso, se le canceló el privilegio de visitas al recurrente, y a otros confinados los cuales se encontraban recluidos en el Módulo 8-B-II, luego de que se incautaran una serie de artículos de contrabando. En virtud de lo anterior, el Departamento estaba legitimado para imponer la cancelación de visitas como medida de seguridad.

Por otra parte, entendemos que es correcta en derecho la determinación del organismo recurrido de no acoger el reclamo que nos ocupa, al amparo de que no tenía jurisdicción para considerar cuestiones colectivas. El Reglamento Núm. 8583, *supra,* establece que la División de Remedios Administrativos únicamente tendrá jurisdicción para atender cualquier cuestión que afecte personalmente al confinado. Por ello, coincidimos con el Departamento en cuanto a que la mencionada división no está

facultada para acoger asuntos que afecten a un grupo de sumariados.

**IV.**

Por los fundamentos antes expuestos, se confirma la resolución recurrida.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones