Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| ANTONIO L. VÁZQUEZ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrida | KLRA202300272 | *RECURSO DE REVISIÓN* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso núm.: 2015-23-031 |

Panel integrado por su presidente el juez Sánchez Ramos, el juez Rivera Torres y el juez Salgado Schwarz.

**Rivera Torres, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2023.

Comparece ante este tribunal apelativo, por derecho propio, el Sr. Antonio L. Vázquez (el señor Vázquez o el recurrente), quien se encuentra confinado en la Institución Correccional Bayamón 501, mediante el recurso de revisión administrativa de epígrafe solicitándonos que revoquemos la *Resolución* emitida por el Departamento de Corrección y Rehabilitación (DCR). Mediante este dictamen, el foro administrativo le impuso al recurrente la sanción de privación de privilegios por un término de 120 días por poseer contrabando peligroso, armas blancas, teléfonos celulares y accesorios para teléfonos celulares.

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución* recurrida.

**I.**

Según surge del Apéndice del recurso, el 8 de marzo de 2023, la celda del señor Vázquez fue registrada por oficiales del DCR y,

Número Identificador
SEN2023_____

producto del registro, se encontraron dos celulares, un cargador y un arma blanca.[1]

Ese mismo día, se radicó un *Informe de Querella de Incidente Disciplinario* en el que se le imputaron cuatro infracciones al *Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional*, Reglamento Núm. 9221 del 8 de octubre de 2020 (Reglamento Núm. 9221). En específico, se alegó que el recurrente violó los siguientes Códigos: (a) 106 (posesión de contrabando peligroso); (b) 107 (posesión de armas blancas); (c) 108 (posesión de teléfonos celulares); y (d) 109 (posesión de accesorios de teléfonos celulares).[2]

El 12 de abril de 2023, el Sr. Ricardo J. Casiano, designado Oficial de Querellas, (Oficial de Querellas) le entregó al señor Vázquez un *Reporte de cargos*[3]. El documento contenía información sobre el procedimiento en su contra y las imputaciones; así como una *Citación para vista administrativa disciplinaria*,[4] la cual se le notificó la calendarización para el 26 de abril de 2023.

El día señalado se celebró la vista administrativa. El 2 de mayo de 2023, la Sra. Elaine M. Reyes Torres, Oficial Examinadora de Vistas Disciplinarias, (Oficial Examinadora) emitió una *Resolución* en la que encontró que el señor Vázquez cometió los actos prohibidos según imputados. En consecuencia, impuso la siguiente sanción: "Privación de los privilegios de recreación activa, actividades especiales, comisaría, visita y cualquier otro privilegio concedido, por un término de ciento veinte (120) días calendarios. Esta sanción será cumplida de forma consecutiva a cualquier otra sanción o medida de seguridad impuesta."

---

[1] Véase el Apéndice del recurso, Anejo 4.
[2] *Íd.*, Anejo 2.
[3] *Íd.*, Anejo 3
[4] *Íd.*

Inconforme, el 5 de mayo de 2023, el recurrente presentó una *Solicitud de reconsideración* alegando que no se especificó el contrabando peligroso que se ocupó, que la sanción que se le impuso violó las disposiciones del Reglamento Núm. 9221, y que no se presentó prueba del cargador presuntamente ocupado.

El 17 de mayo de 2023, la Oficial Examinadora dictó una *Determinación* en la que declaró *No Ha Lugar* a la reconsideración solicitada.[5] Según el dictamen, todos los artículos ocupados constituyeron contrabando peligroso y fueron detallados en la *Resolución.* Asimismo, concluyó que la sanción fue conforme al reglamento y precisó que en la vista se presentó foto de la evidencia ocupada, la cual incluía el cargador del celular.

Insatisfecho aún, el señor Vázquez acude ante este foro apelativo mediante el presente recurso solicitando que se revoque la sanción que le fue impuesta por varias violaciones al Reglamento Núm. 9221. En su recurso, le imputa al foro recurrido haber incurrido en los siguientes errores:

> (1) ERRÓ LA ADMINISTRACIÓN DE CORRECCIÓN POR CONDUCTO DE SUS FUNCIONARIOS AL VIOLARLE LAS GARANTÍAS MÍNIMAS DEL DEBIDO PROCESO DE LEY AL PERMITIR QUE UN MISMO FUNCIONARIO FUNGIERA COMO OFICIAL DE QUERELLA E INVESTIGADOR DE VISTA.
>
> (2) ERRÓ LA ADMINISTRACIÓN DE CORRRECCIÓN POR CONDUCTO DE SUS FUNCIONARIOS AL AQUILATAR LA PRUEBA QUE NO ESPECIFICA CÓMO FUE OCUPADA, VULNERANDO EL DEBIDO PROCESO DE LEY.

Examinado el recurso y los documentos que le fueron adjuntados, prescindimos de la comparecencia de la parte recurrida, conforme nos faculta la Regla 7(B)(5) del Reglamento de este Tribunal de Apelaciones.

Analizados el escrito y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

---

[5] *Íd.*, Anejo 1.

## II.

**Revisión judicial de las determinaciones administrativas**

En nuestro ordenamiento, la revisión de las decisiones administrativas busca limitar la discreción de las agencias y garantizar que estas desempeñen sus funciones según los confines de la ley. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891-892 (2008). De acuerdo con esto, la tarea de los tribunales consiste en examinar si las decisiones de las agencias se tomaron dentro de los poderes delegados y si son compatibles con la política pública que las origina. *Rolón Martínez v. Caldero López*, 201 DPR 26, 35 (2018). Así, como regla general, el ejercicio de revisión judicial de una decisión administrativa se limita a tres asuntos: (1) la concesión del remedio apropiado; (2) la revisión de las determinaciones de hechos conforme al criterio de evidencia sustancial; y (3) la revisión completa y absoluta de las conclusiones de derecho. *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010).

Dentro de este marco, cuando un tribunal apelativo revisa las determinaciones de un organismo administrativo, le debe conceder gran consideración y deferencia a dichas decisiones debido a la vasta experiencia y al conocimiento especializado en los asuntos que les han encomendados. *Rolón Martínez v. Caldero López*, *supra* en la pág. 35. Así, estas determinaciones están protegidas por una presunción de legalidad y corrección, la cual los tribunales deben respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas. *Íd.* Por ello, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos. *García Reyes v. Cruz Auto Corp.*, *supra* en la pág. 892.

Dicho esto, la referida deferencia cede en ciertas situaciones, tales como: (1) cuando la decisión no esté basada en evidencia sustancial; (2) cuando la agencia haya errado en la aplicación de la

ley; (3) cuando su actuación resulte ser arbitraria, irrazonable o ilegal; y (4) cuando la actuación administrativa lesiona derechos constitucionales fundamentales. *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012) (*citando a Empresas Ferrer v. A.R.PE.*, 172 DPR 254, 264 (2007)).

Por último, tanto la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAUG), Ley núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA sec. 9675, como la jurisprudencia marcan que el estándar para evaluar determinaciones de hechos es uno de evidencia sustancial, mientras que las conclusiones de derecho son revisables en todos sus aspectos. En esencia, aplicando el criterio de razonabilidad y deferencia, los tribunales no alterarán las determinaciones de hechos de las agencias, siempre que surja del expediente evidencia sustancial que las sustente. *Asoc. Fcias. v. Caribe Specialty et al. II*, *supra* en la pág. 940. En este respecto, evidencia sustancial significa aquella prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Capó Cruz v. Junta de Planificación*, 204 DPR 581, 591 (2020) (citas omitidas). En cuanto a las conclusiones de derecho, el tribunal está llamado a aplicar los referidos criterios de intervención, imponiendo su criterio únicamente en situaciones en que no se desprenda una base racional que fundamente la actuación de la agencia administrativa y situándose en la misma posición que esta para apreciar la prueba pericial y documental. *García Reyes v. Cruz Auto Corp.*, *supra* en la pág. 895. Así, es preciso recalcar que solo se debe intervenir con las decisiones administrativas si se concluye que se ha actuado de forma arbitraria, ilegal o irrazonable. *Rolón Martínez v. Caldero López, supra* en la pág. 36.

**Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional**

El Reglamento Núm. 9221, *supra*, fue promulgado por el DCR para proveer una estructura disciplinaria para los miembros de la población correccional desde una perspectiva de rehabilitación que rechazara el propósito punitivo. En la Regla 4, el Reglamento Núm. 9221 provee varias definiciones para regir sus disposiciones. Entre ellas, se destacan por su pertinencia las siguientes:

> (17) Oficial de Querellas – Oficial de Custodia de la Institución Correccional designado por un Supervisor a la Oficina de Disciplina de Confinados que junto al Oficial Examinador asume deberes y obligaciones inherentes al puesto, que incluye, pero no se limitan a, realizar las investigaciones y los asuntos relacionados a los procedimientos disciplinarios administrativos presentados contra los miembros de la población correccional, según se expone en este Reglamento.
>
> 18. Oficial Examinador – funcionario que preside las vistas disciplinarias por infracciones a las normas de conducta institucional según establecidos en este Reglamento y los casos de vistas de revocación de Programas de Desvío y Residenciales. Además, evaluarán la solicitud de reconsideración de sus decisiones. Reglamento Núm. 9221, Regla 4, incisos (17) y (18).

Por otra parte, la Regla 6 establece que, una vez se reciba la querella, el Oficial de Querellas tendrá el deber y la responsabilidad de asignar un número de querella, registrarla en un Libro de Registro de Querellas, determinar el nivel de severidad y el código aplicable al acto prohibido que se imputa, comenzar la preparación de un expediente para formalizar el inicio de la investigación y coordinar la calendarización de las vistas administrativas. *Íd.*, Regla 6, inciso (C), subincisos (1-4). Asimismo, este oficial estará encargado de preparar un *Reporte de cargos* con la obligación de notificarle por escrito al miembro de la población correccional sobre el acto que se le imputa y de que dicha notificación sea clara y específica, precisando hechos y acciones que constituyen violación al Reglamento Núm. 9221. *Íd.,* inciso (D), subinciso (2). Por último, al confinado se le debe advertir que su caso será referido para la

celebración de una vista administrativa y que tiene la posibilidad de solicitar que se le provea copia de todo documento que sea parte del Reporte. *Íd.,* subincisos (3) y (4).

Entretanto, la Regla 12, intitulada "Investigación", dispone que todo caso de querella disciplinaria estará sujeto a la correspondiente investigación llevada a cabo por el Oficial de Querellas. *Íd.*, Regla 12. A su vez, la Regla 24, la cual se titula Notificación de la vista administrativa, dispone que el Oficial de Querellas deberá notificar al querellado sobre la fecha de la celebración de la vista administrativa ante el Oficial examinador con, por lo menos, quince días laborables de anticipación. *Íd.*, Regla 24.

Asimismo, la Regla 25, titulada Vistas administrativas ante el oficial examinador, dispone que "[e]l Oficial Examinador es el funcionario nombrado por el Secretario del Departamento de Corrección y Rehabilitación que preside las vistas administrativas disciplinarias por infracciones a las normas de conducta institucional según establecidas [...]". *Íd.*, Regla 25.

**Reglamento de Registros**

Con el propósito de proveer guías necesarias para la realización de registros personales a la población correccional y en áreas de vivienda, el 30 de diciembre de 2004, el DCR promulgó a nivel interno el Reglamento de Registros (Reglamento de Registros).[6] Entre las definiciones que esta reglamentación incluye en su Artículo V, se describe "Registro" de la siguiente manera:

> Inspección visual o búsqueda de contrabando, propiedad hurtada o desaparecida, y situaciones de riesgo para la seguridad institucional mediante el uso de registro físico, de dispositivos o medios electrónicos, unidad canina, rayos x, o tecnología similar. El registro, en general, se realiza en personas (registro personal) o en áreas de vivienda, vehículos y otros lugares de la institución, con los propósitos antes mencionados.

---

[6] El Reglamento de registros interno del DCR se puede conseguir en la siguiente dirección:                    http://dcr.pr.gov/wp-content/uploads/2016/09/ri-reglamento_de_registrox.pdf.

Para lograr los fines del Reglamento, el Artículo VI establece las normas y procedimientos a seguir en los registros personales, los cuales incluyen cacheos, registros al desnudo y registro de cavidades, y en los registros a las áreas de vivienda y otros lugares de la institución penal. Respecto a estos últimos, el inciso 3 del Artículo VI es claro al establecer: "[s]e realizarán registros en áreas de vivienda y otros lugares de la institución, de forma irregular y sin previo aviso. Estos registros van dirigidos a detectar contrabando, prevención de fugas, mantener las condiciones sanitarias requeridas y eliminar riesgos de incendio o para la seguridad de la institución. [...]". Reglamento de registros, Artículo VI, inciso (3). Luego, en el subinciso (a) se detalla que este tipo de registro se podrá hacer de forma total o parcial y que no será anunciado previamente a los miembros de la población correccional. *Íd.*, subinciso (a).

### III.

El señor Vázquez planteó que procede revocar la sanción que le fue impuesta por violar el Reglamento Núm. 9221. Al respecto, este señaló que se violaron las garantías del debido proceso de ley por permitirse que un mismo funcionario fuera el Oficial de Querellas y el Investigador de Vista, y por contemplarse una prueba que no se especifica cómo fue ocupada. Adelantamos que no le asiste la razón. Veamos.

En cuanto al primer error, el expediente presentado por el propio recurrente carece de la presencia de la figura que denomina "Investigador de vista". Es decir, en el proceso administrativo llevado en su contra, el Oficial de Querellas fue el Sr. Ricardo J. Casiano y como Oficial Examinadora fungió la Sra. Elaine M. Reyes Torres. De igual manera, y como es evidenciado en el expediente, el Oficial de Querellas cumplió con las múltiples disposiciones que le asigna el Reglamento Núm. 9221, los cuales incluyeron entregarle la *Citación para vista administrativa disciplinaria*, el *Reporte de Cargos* y la

*Resolución* recurrida. Cabe añadir también que, según surge del *Informe Disciplinario*, el registro de la celda fue llevado a cabo por los oficiales Kevin Maysonet Maldonado y Jan González Ruiz.

Asimismo, y en contravención al argumento del recurrente, en la normativa administrativa vigente no existe la designación del "Investigador de vista" en el Reglamento Núm. 9221. A estos efectos, resulta necesario precisar que este funcionario se contemplaba en el *Reglamento disciplinario para la población correccional*, Reglamento Núm. 7748 del 23 de septiembre de 2009, el cual fue derogado por el Reglamento Núm. 9221.[7] En dicha regulación, la Regla 4, en su inciso 11, definía "Investigador de vistas" como:

> la persona de la institución seleccionado [sic.] por el superintendente que sirve como colector imparcial de pruebas y cuyo deber es realizar la investigación relacionada a los cargos imputados al confinado durante el proceso de disciplina. En aquellos casos en que el confinado no tenga la capacidad de presentar su propia prueba, le será permitido al Investigador de Vistas hablar en sustitución del confinado para presentar la prueba que fue recopilada en el informe del investigador. No obstante, el Investigador de Vistas carece de facultad para emitir recomendación o determinación alguna en el caso. Reglamento Núm. 7748 (derogado), Regla 4, inciso (11).

Más aún, el Reglamento Núm. 9221 no solo eliminó este nombramiento si no que consolidó las tareas investigativas en el Oficial de Querellas.

Sobre el segundo error, del examen del recurso presentado por el recurrente, surge que este planteamiento no reúne los requisitos reglamentarios para que esta *Curia* lo atienda. En esencia, resulta imposible discernir precisamente cuál es el error que se le imputa al DCR ni los méritos que motivan su revocación. Así, resta concluir que el recurrente no colocó a este foro apelativo en las condiciones para negarle la deferencia debida al organismo administrativo y variar su determinación. En todo caso, aún

---

[7] El derogado Reglamento Núm. 7748 se puede conseguir en la siguiente dirección:
http://app.estado.gobierno.pr/ReglamentosOnLine/Reglamentos/7748.pdf.

interpretando que el recurrente alega que el DCR erró al no entregarle un Informe o que no se especificó el carácter del registro, no encontramos razón para invalidar la determinación de la agencia. Por el contrario, y como expusimos, el Reglamento de Registros es claro al establecer que el registro de viviendas se hará de forma irregular, sin previo aviso a la población correccional y podrá ser total o parcial. De esta manera, el DCR está facultado para llevar a cabo registros por razones de seguridad en todas las áreas de la institución penal. Tampoco encontramos que exista una obligación institucional de realizar las acciones que el recurrente reclama.

En definitiva, no encontramos razón para intervenir en la determinación impugnada y a su vez, dejar de otorgarle deferencia a la decisión tomada. Tampoco el recurrente presentó prueba que derrotara la presunción de regularidad y corrección que le cobija a la actuación del DCR. Por el contrario, no cabe duda alguna de que el proceder del ente administrativo está claramente fundamentado en la normativa reglamentaria previamente explicada.

Por consiguiente, no se cometieron los errores señalados. Reiteramos que resulta evidente que el DCR actuó dentro de los parámetros de su autoridad y por razones válidas que justifican su proceder.

**IV.**

Por los fundamentos antes expuestos, se confirma la *Resolución* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones