Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL ESPECIAL

| | | |
|---|---|---|
| EAST SIDE DEVELOPMENT, LLC. P/C ING. CAMILO ALMEYDA EURITE<br><br>Proponente-Recurrido<br><br>V.<br><br>EXCEL GASOLINE & FOOD MART, LLC.<br><br>Interventor-Recurrente<br><br>V.<br><br>OFICINA DE GERENCIA DE PERMISOS<br><br>Agencia Recurrida | KLRA202300370 | *Revisión de Decisión Administrativa* procedente del Departamento de Desarrollo Económico y Comercio, Oficina de Gerencia de Permisos<br><br>Caso Número: 2020-312000-CUB-002846<br><br>Sobre: Consulta de Ubicación |

Panel integrado por su presidenta; la Juez Domínguez Irizarry, la Juez Lebrón Nieves y la Juez Rivera Marchand

*Lebrón Nieves, juez ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 26 de septiembre de 2023.

El 18 de julio de 2023, compareció ante este Tribunal de Apelaciones, Excel Gasoline & Food Mart, LLC (en adelante, Excel o parte recurrente) por medio de *Recurso de Revisión* y nos solicita que revoquemos la *Resolución* emitida el 28 de junio de 2023, notificada el 10 de julio de 2023, por la Oficina de Gerencia y Permisos (en adelante, OGPe o agencia recurrida). En virtud de la aludida decisión, la Junta Adjudicativa de la OGPe consideró favorable una *Consulta de Ubicación* Núm. 2020-31200-CUB-002846, promovida por East Side Development, LLC p/c Ing. Camilo Almeyda Eurite (en adelante, East Side o parte recurrida). La referida consulta, versaba

sobre un proyecto comercial -el cual contemplaba la construcción de una estación de gasolina y un edificio comercial- y, la segregación de dos (2) parcelas de terreno en las que se ubicaría el aludido proyecto.

Por los fundamentos que adelante se esbozan, se confirma la *Resolución* recurrida.

**I**

El presente caso tiene su génesis en una solicitud de *Consulta de Ubicación* Núm. 2020-31200-CUB-002846, presentada ante la OGPe, el 29 de mayo de 2021, dirigida a los fines de construir una estación de gasolina y un edificio comercial.[1] Como cuestión de umbral, precisa destacar que esta es la segunda ocasión en que las partes comparecen a esta instancia judicial dentro del mismo pleito ante la OGPe. De manera que, el trámite procesal del caso fue plasmado en una anterior *Sentencia*, emitida el 26 de enero de 2023, por este mismo panel, en el recurso con identificación alfanumérica KLRA202200652. En vista de ello, nos limitaremos a esbozar el trámite pertinente a la controversia que nos ocupa.

En el recurso anterior ante este foro revisor, revocamos una *Resolución sobre Consulta de Ubicación*, emitida y notificada por la OGPe el 8 de noviembre de 2022, toda vez que, la misma se apoyaba en el Reglamento Conjunto 2020, el cual fue declarado nulo por esta Curia. En lo específico, dispusimos que, un reglamento nulo no era jurídicamente vinculante, por lo que la determinación emitida había sido apoyada en "trámites y preceptos inexistentes".[2] A esos efectos, devolvimos el caso al organismo administrativo para que atendiera la *Consulta de Ubicación* Núm. 2020-31200-CUB-002846, "a la luz de Reglamento que, al presente, [estuviese] vigente."[3]

---

[1] Véase, Apéndice 1 del *recurso de revisión*, pág. 3.
[2] Véase, *Sentencia* emitida en el *recurso de revisión* identificado con el alfanumérico KLRA202200652.
[3] *Íd.*

Conforme surge, luego de haberse emitido la referida *Sentencia* por este Tribunal Apelativo, la agencia recurrida presentó *Solicitud de Reconsideración al Amparo de la Regla 84(A) del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXIIB*, el 13 de febrero de 2023. Posteriormente, el 16 de febrero de 2023, la parte recurrente presentó *Oposición a Solicitud de Reconsideración.* Examinados los escritos, este foro revisor dispuso No Ha Lugar la solicitud de reconsideración, mediante *Resolución* emitida el 21 de febrero de 2023.

Así las cosas, el 28 de junio de 2023, notificada el 10 de julio de 2023, la Junta Adjudicativa de la OGPe emitió una *Resolución,* por medio de la cual, reafirmó la aprobación de la *Consulta de Ubicación* promovida por East Side, al amparo del Reglamento Conjunto 2020. Sostuvo que, en consideración a la Opinión *Per Curiam* del Tribunal Supremo de Puerto Rico, emitida el 16 de junio de 2023 en el caso *Martínez Fernández et al. v. OGP et al.*, 2023 TSPR 75, 212 DPR ___ (2023), la *Sentencia* emitida por esta segunda instancia judicial, en el caso número KLRA202200652, había quedado sin efecto.

En vista de ello, la OGPe emitió la *Resolución* recurrida, consignando un total de treinta y dos (32) determinaciones de hechos. A tenor con tales determinaciones y el derecho allí expuesto, la OGPe dispuso lo siguiente:

> Por la presente, tomando en consideración lo anteriormente expuesto, y en virtud de las facultades conferidas mediante las leyes, normas y órdenes administrativas vigentes, la Junta Adjudicativa consideró **FAVORABLE** la solicitud número 2020-312000-CUB-002846, sobre Consulta de Ubicación para un proyecto comercial (estación de gasolina y edificio comercial), y segregación de las dos (2) parcelas en que ubicará el proyecto, según se describe en las Determinaciones de Hecho, condicionado a:
>
> - Se autorizan parámetros de diseño conforme a un Distrito C-I.

- Se autoriza el cambio de calificación de la Propiedad a un Distrito C-I.

- Provisión de un acceso público que cumpla con las disposiciones reglamentarias aplicables y atienda las recomendaciones efectuadas por la Autoridad de Carreteras y Transportación a cada uno de los solares a crearse como parte de la propuesta.

- Cumplir con las recomendaciones de agencias concernidas, y con las recomendaciones de la Determinación de Cumplimiento Ambiental (2020-312000-DEA-004371).[4]

En desacuerdo con lo dictaminado, Excel recurre de la decisión administrativa antes citada y nos expone los siguientes señalamientos de error:

Erró la Oficina de Gerencia de Permisos al interpretar que la Opinión *Per Curiam* del Tribunal Supremo de Puerto Rico en el caso *Martínez Fernández v. OGPe*, supra, dejó sin efecto la Sentencia del Tribunal de Apelaciones en el Caso Número KLRA202200652 la cual fue emitida el 26 de enero de 2023.

Erró la Oficina de Gerencia de Permisos al interpretar que la Opinión del TSPR en el caso *Martínez Fernández v. Oficina de Gerencia de Permisos*, supra, es aplicable al presente caso al equiparar la consulta con un permiso.

Erró la Oficina de Gerencia de Permisos al cambiar Determinaciones de Hechos y Conclusiones de Derecho sin garantizar la participación de la parte interventora en el procedimiento administrativo.

Erró la Oficina de Gerencia de Permisos al autorizar la consulta de ubicación pues la propuesta no cumple con la reglamentación aplicable, ni con la Ley Núm. 73 de 23 de junio de 1978, según enmendada por Ley Núm. 154 de 18 de junio de 1980; por lo que no existe en el expediente administrativo la evidencia sustancial que justifique o fundamente la decisión emitida por la agencia.

El 7 agosto de 2023, compareció ante este foro revisor, la OGPe, mediante *Oposición a Revisión Administrativa*. Posteriormente, el 16 de agosto de 2023, compareció East Side mediante *Oposición a Recurso de Revisión Administrativa*.

Perfeccionado el recurso, procedemos a esbozar la normativa que gobierna el asunto ante nos.

---

[4] Apéndice I del *recurso de revisión*, pág. 30.

## II

### A. *Estándar de Revisión Judicial de Determinaciones Administrativas*

Según es sabido, los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que, estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *Hernández Feliciano v. Mun. Quebradillas*, 2023 TSPR 6, 211 DPR ___ (2023); *OEG v. Martínez Giraud,* 210 DPR 79, 87-89 (2022); *Pérez López v. Depto. Corrección*, 208 DPR 656, 672 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26,35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012); *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010). Es por ello que, tales determinaciones suponen una presunción de legalidad y corrección, que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Íd*. No obstante, tal norma no es absoluta, es por lo que, nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.

En *Torres Rivera v. Policía de Puerto Rico*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando

determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que **si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida**. (Énfasis suplido).[5]

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *Hernández Feliciano v. Mun. Quebradillas*, supra; *OEG v. Martínez Giraud*, supra, pág. 90; *Super Asphalt v. AFI y otros*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*; *Pérez López v. Depto. Corrección*, supra, pág. 673; *Super Asphalt v. AFI y otros*, supra, pág. 819-820; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Batista, Nobbe v. Jta. Directores*, pág. 216.

Bajo este supuesto, la Sec. 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9675, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), "estableció el marco de revisión judicial de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.* págs. 35-36; *Hernández Feliciano v. Mun. Quebradillas*, supra; *OEG v. Martínez Giraud*,

---

[5] Véase *Hernández Feliciano v. Mun. Quebradillas*, supra; *Super Asphalt v. AFI y otros*, supra, págs. 819-820.

supra*; Torres Rivera v. Policía de PR,* supra, págs. 626-627; *Nobbe v. Jta. Directores,* supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Nuestro Máximo Foro, ha expresado que, esta intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía,* supra, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd.; Hernández Feliciano v. Mun. Quebradillas,* supra; *OEG v. Martínez Giraud,* supra, pág. 90; *Super Asphalt v. AFI y otros,* supra, pág. 819-820. Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. *Rolón Martínez v. Supte. Policía,* supra, pág. 36; *Torres Rivera v. Policía de PR,* supra, pág. 627; Sec. 4.5 LPAU, 3 LPRA sec. 9675. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Rolón Martínez v. Supte. Policía,* supra, págs. 36-37; *Torres Rivera v. Policía de PR,* supra, pág. 627. El Tribunal Supremo ha dispuesto que, la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales. *Íd.* págs. 627-628; *OEG v. Martínez Giraud,* supra. Finalmente, nuestra más Alta Curia ha expresado que, conforme lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise* administrativo, concedido

cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *Íd.*

### B. *Ley para la Reforma del Proceso de Permisos de Puerto Rico y Reglamento Conjunto*

La *Ley para la Reforma del Proceso de Permisos de Puerto Rico*, Ley Núm. 161-2009, según enmendada, 23 LPRA §§ 9011 *et seq.* (en adelante, Ley Núm. 161-2009), se aprobó a los fines de crear la OGPe y establecer el marco legal y administrativo integrado que rija los procesos de solicitud, evaluación, concesión y denegación de permisos por el Gobierno de Puerto Rico. *Horizon v. Jta. Revisora, RA Holdings*, 191 DPR 228, 236 (2014). Dichos procesos están revestidos del más alto interés público por su relación intrínseca con el desarrollo económico, la creación de empleos, la prestación de servicios y el disfrute de una mejor calidad de vida. Ley Núm. 161-2009, *Exposición de Motivos.*

En lo que atañe para atender la controversia ante nuestra consideración, el Artículo 1.5 de la Ley Núm. 161-2009, *supra*, define consulta de ubicación como:

> [E]l procedimiento ante la Oficina de Gerencia de Permisos o los Municipios Autónomos con Jerarquía de la I a la V, a los cuales se le haya delegado dicha facultad por medio del Convenio de Transferencia, para que evalúen, pasen juicio y tomen la determinación que estimen pertinente sobre propuestos usos de terrenos que no son permitidos ministerialmente y que no pueden considerarse mediante otro mecanismo. En áreas no calificadas incluye propuestos usos de terrenos que por su naturaleza y complejidad requieran un grado mayor de análisis. 23 LPRA § 9011 (14).

Por otro lado, la Ley Núm. 161-2009, *supra*, dispone que un permiso es lo siguiente:

> Aprobación escrita autorizando el comienzo de una acción, actividad o proyecto, expedida por la Oficina de Gerencia de Permisos, por un Municipio Autónomo con Jerarquía de la I a la V, o por un Profesional Autorizado, conforme a las disposiciones de esta Ley y para la cual no se incluyen licencias, certificados de inspección, ni certificaciones[.] 23 LPRA § 9011 (57).

Es menester destacar que, la Ley Núm. 161-2009, *supra,* determina expresamente que una determinación final de una consulta de ubicación no supone un permiso mismo. En lo específico, la referida Ley Núm. 161-2009, *supra,* dispone, en su definición de determinaciones finales, lo siguiente:

> **Determinaciones finales** – Actuación, resolución, informe o documento que contiene un acuerdo o decisión emitida por la Junta de Planificación, el Director Ejecutivo, el Juez Administrativo, los Municipios Autónomos con Jerarquía de la I a la V o un Profesional Autorizado, o una Entidad Gubernamental Concernida, adjudicando de manera definitiva algún asunto ante su consideración o cualquier otra determinación similar o análoga que se establezca en el Reglamento Conjunto. La determinación se convertirá en final y firme una vez hayan transcurrido los términos correspondientes para revisión. **En el caso de las consultas de ubicación, una determinación final no constituye la otorgación de un permiso**. (Énfasis suplido.) 23 LPRA § 9011 (21).

De otro lado, precisa señalar que, el Art. 15.1 de la Ley Núm. 161-2009, *supra,* le encomienda a la Junta de Planificación, con colaboración de la OGPe y las entidades gubernamentales concernidas, a preparar y adoptar un reglamento conjunto con el fin de establecer y aplicar lo siguiente: (a) un sistema uniforme de adjudicación; (b) la evaluación y expedición de determinaciones finales, permisos y recomendaciones relacionados a obras de construcción y uso de terrenos; (c) las guías de diseño verde para la capacitación de los Profesionales Autorizados y a cualquier otra persona que le interese certificarse bajo las guías de diseño verde de Puerto Rico; (d) procedimiento de auditorías y querellas ante la Junta de Planificación, las Entidades Gubernamentales Concernidas y los Municipios Autónomos con Jerarquía de la I a la V, según aplique; y (e) cualquier otro asunto que esta Ley haya referido atenderse mediante reglamentación y aquellas específicamente concernientes a la OGPe.[6]

---

[6] 23 LPRA sec. 9025.

Bajo las facultades conferidas por la Ley Núm. 161-2009, *supra*, a la Junta de Planificación, tal entidad promulgó el Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios, Reglamento Núm. 9233 de 2 de diciembre de 2020, con vigencia desde el 2 de enero de 2021 (en adelante, Reglamento Conjunto de 2020). No obstante, el 31 de marzo de 2021, este Foro emitió una *Sentencia* mediante la cual declaró nulo el Reglamento Conjunto de 2020.[7] Asimismo, mediante *Sentencia* emitida y notificada el 12 de abril de 2021, reafirmó la nulidad del reglamento.[8] El Tribunal Supremo de Puerto Rico denegó los recursos de *Certiorari* presentados por la Junta de Planificación que intentaban revocar la determinación de nulidad del aludido reglamento emitida por este Tribunal.

Sin embargo, posterior a ello, el 16 de junio de 2023, el más Alto Foro emitió una Opinión *Per Curiam*, en el caso *Martínez Fernández et al. v. OGP et al.*, supra, en la que declaró "sin ambages", la nulidad del Reglamento Conjunto de 2020. *Íd.* (Énfasis suprimido en el original.)[9] Así pues, el aludido reglamento quedó invalidado. Ahora bien, el Tribunal Supremo de Puerto Rico estableció que el efecto de la nulidad tendría carácter prospectivo. *Íd*. De manera que, los permisos autorizados y expedidos al amparo del Reglamento Conjunto de 2020, no quedaron automáticamente invalidados. En lo específico, el Máximo Foro expuso lo siguiente:

> [T]odo **permiso** que haya sido autorizado y expedido al amparo de los referidos reglamentos, previo a la emisión de este pronunciamiento, **deberá ser aceptado como legal por toda la ciudadanía**. Así, decretaremos meridianamente que ningún **permiso** autorizado y expedido al amparo del Reglamento Conjunto de 2019

---

[7] Véase KLRA202100044.

[8] Véase KLRA202100047.

[9] Hacemos constar que en su Opinión, el Tribunal Supremo de Puerto Rico declaró la nulidad tanto del Reglamento Conjunto de 2020, como del Reglamento Conjunto de 2019. No obstante, en la presente sentencia, haremos alusión únicamente a la nulidad del Reglamento Conjunto de 2020, por ser el relacionado a la controversia que nos ocupa.

y el Reglamento Conjunto de 2020 es inválido por razón de que estas regulaciones hayan sido declaradas nulas.

Las **solicitudes de permisos** pendientes de adjudicación y en las cuales se hayan celebrado o señalado vista adjudicativa se podrán continuar tramitando al amparo del reglamento conjunto aplicable. Esto aplica igualmente a aquellos **permisos** cuya autorización y expedición no es final y firme por ser objeto de revisión en los tribunales. Los tribunales evaluarán los recursos que se presenten a tales efectos a la luz del reglamento que la agencia haya utilizado para autorizar y expedir el **permiso** impugnado, si como cuestión de derecho es el aplicable. *Íd.* (Énfasis nuestro y en el original.)

Cabe destacar que, en la misma fecha en que fue emitida la aludida Opinión *Per Curiam*, entiéndase, el 16 de junio de 2023, la Junta de Planificación adoptó el nuevo Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios, Reglamento Núm. 9473 de 16 de junio de 2023 (en adelante, Reglamento Núm. 9473 o Reglamento Conjunto de 2023). En virtud de este nuevo Reglamento, se acogieron las siguientes definiciones, pertinentes al asunto que nos ocupa:

**Consulta de Terrenos y Ubicación** – Procedimiento de recalificación mediante el cual se toma una determinación final de carácter discrecional, que **nunca podrá ser considerada como un permiso**, sobre:

a. propuestos usos de terrenos que no son permitidos ministerialmente por la reglamentación aplicable en áreas calificadas, pero que las disposiciones reglamentarias o legales proveen para que sean consideradas por la Junta Adjudicativa de la OGPe o Municipio Autónomo con Jerarquía de la I a la V;

b. proyectos en los que se propone una densidad o intensidad mayor a la que permite el distrito en que ubica y no cumplen con el uso permitido en el distrito;

c. proyectos en los que se propone un desarrollo en un solar con mayor o menor cabida a la establecida y que no pueda considerarse mediante una variación en construcción;

d. propuestos usos de terrenos de carácter regional que estén en conformidad con las facultades que retiene la Junta de Planificación, bajo las disposiciones de la Ley Núm. 81, supra y el

Reglamento sobre los Planes de Ordenación Municipal y la Transferencia y Administración de Facultades (Reglamento de Planificación Núm. 24);

e. propuestos usos de terrenos que por su naturaleza o intensidad requieren una ubicación especial o particular para atender situaciones especiales, tales como proyectos industriales pesados como procesamiento de material de corteza terrestre, estaciones de trasbordo o de disposición final de desperdicios sólidos, entre otros, pero que en ningún caso se consideran proyectos suprarregionales;

f. propuestos usos de terrenos en áreas no calificadas que no han sido contemplados en los Reglamentos de Planificación; y

g. toda mejora pública no inscrita en el Programa de Inversiones de Cuatro Años (PICA), excepto las transacciones públicas y aquéllas que se declaran exentas mediante resolución por la Junta de Planificación.[10]

*[…]*

**Permiso** – Aprobación escrita autorizando el comienzo de una acción o actividad, expedida por la OGPe, Municipio Autónomo con Jerarquía de la I a la V o por un Profesional Autorizado o Entidad Concernida conforme a las disposiciones de este Reglamento y para el cual no se incluyen licencias, certificados de inspección, ni certificaciones.[11]

**III**

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

Por estar relacionados los primeros dos señalamientos de error, los discutiremos de forma conjunta. En esencia, debemos determinar si erró la agencia recurrida al emitir la *Consulta de Ubicación* Núm. 2020-31200-CUB-002846 al amparo del Reglamento Conjunto de 2020, de conformidad a lo resuelto por el Tribunal Supremo de Puerto Rico, en el caso *Martínez Fernández et al. v. OGP et al.,* supra. Veamos.

---

[10] Tomo XII, Glosario de Términos, Reglamento Conjunto de 2023, pág. 806 y Tomo XII Glosario de Términos, Reglamento Conjunto 2020, págs. 798-799.
[11] *Íd.*, pág. 858 y pág. 850 respectivamente.

Conforme surge del tracto procesal reseñado, conviene destacar de entrada que, el asunto ante nuestra consideración versa sobre una consulta de ubicación. A grandes rasgos, una consulta de ubicación supone un procedimiento de recalificación, en el que se evalúa y se toma una determinación final de carácter discrecional sobre, entre otros, propuestos usos de terrenos que no son permitidos ministerialmente por la reglamentación aplicable en áreas calificadas, pero pueden ser consideradas por la Junta Adjudicativa de la OGPe o Municipio Autónomo con Jerarquía de la I a la V. 23 LPRA § 9011 (14); Reglamento Conjunto de 2023, pág. 806, Reglamento Conjunto 2020, págs. 798-799.

Por otro lado, tanto la Ley Núm. 169-2009, *supra*, como el Reglamento Núm. 9373, definen permiso como una aprobación escrita, expedida por la OGPe, un Municipio Autónomo con Jerarquía de la I a la V, o por un Profesional Autorizado, que autoriza la iniciación de una acción, actividad o proyecto. 23 LPRA § 9011 (57); Reglamento Conjunto de 2023, pág. 858, Reglamento Conjunto 2020, pág. 850.

De las disposiciones legales citadas, surge una clara distinción entre lo que es un **permiso** y lo que es una **consulta de ubicación**. En adición, tanto la Ley Núm. 169-2009, *supra*, como el Reglamento Núm. 9373, así como el Reglamento Núm. 9233, expresamente disponen que **una consulta de ubicación no puede ser considerada como un permiso**.[12]

Ahora bien, según expusiéramos previamente, nuestra última instancia judicial emitió una Opinión *Per Curiam*, el 16 de junio de 2023, en el caso *Martínez Fernández et al. v. OGP et al.*, supra, en la que, en lo pertinente, declaró la nulidad del Reglamento Conjunto de 2020. No obstante, razonó el Alto Foro que, la nulidad tendría

---

[12] Véase 23 LPRA § 9011 (21); Tomo XII, Glosario de Términos, Reglamento Conjunto de 2023, pág. 806.

efecto prospectivo, a partir de la certificación de dicha opinión. *Íd.* De manera que, los permisos autorizados y expedidos al amparo del Reglamento Conjunto de 2020, continúan gozando de legalidad. *Íd.* Asimismo, dispuso la Alta Curia que, **las solicitudes de permisos pendientes de adjudicación, y aquellos permisos cuya autorización y expedición no es final y firme por ser objeto de revisión en los tribunales, tampoco son nulos y se podrán continuar tramitando al amparo del Reglamento Conjunto de 2020.** *Íd.*

Una lectura del caso antes citado revela que el Tribunal Supremo de Puerto Rico limitó su decisión prospectiva a: (i) permisos autorizados y expedidos al amparo del Reglamento Conjunto de 2020; (ii) solicitudes de permisos pendientes de adjudicación y, (iii) **permisos que no eran finales ni firmes por ser objeto de revisión en los tribunales.**

De entrada, es meritorio puntualizar que, no es correcto afirmar, tal cual surge de la Resolución recurrida, que como corolario de la Opinión *Per Curiam* aludida, la *Sentencia* emitida por este Tribunal Apelativo, en el caso número KLRA202200652, fue dejada sin efecto. Lo cierto es que, en el caso *Martínez Fernández et al. v. OGP et al.,* supra, no se hace alusión específica a la *consulta de ubicación,* que, como mencionamos previamente, no es propiamente un *permiso.*

Empero, en un ejercicio de pura hermenéutica, colegimos que, en el caso de marras procede aplicar, **por analogía[13]**, lo allí resuelto. Ello, por tratarse de una autorización y expedición que no es final y firme, por ser objeto de revisión en los tribunales. Como mencionamos, la última instancia judicial dispuso que, los

---

[13] Véase *Orraca López v. ELA*, 192 DPR 31,45 (2014), citando al tratadista Puig Brutau, Compendio de Derecho Civil, Barcelona, Ed. Bosch, 1987, Vol. I, pág. 105.

tribunales debíamos evaluar los recursos que se presentaran a tales efectos, a la luz del reglamento que la agencia hubiese utilizado para autorizar y expedir el permiso [consulta] impugnado, si como cuestión de derecho, es el aplicable.

Como sabemos, en el caso número KLRA202200652, esta Curia ordenó la consideración de la *Consulta de Ubicación* Núm. 2020-31200-CUB-002846 al amparo del reglamento vigente al momento en que se emitió la misma. Habida cuenta que el Reglamento utilizado por la OGPe al evaluar la *Consulta de Ubicación* Núm. 2020-31200-CUB-002846 fue el Reglamento Conjunto 2020, procede mantener inalterado lo determinado por la agencia recurrida. Consecuentemente, concluimos que el primer y el segundo error señalado, no fueron cometidos por la agencia recurrida.

En cuanto los señalamientos de errores tercero y cuarto, nuestra función revisora se limita a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*; *Pérez López v. Depto. Corrección*, supra, pág. 673; *Super Asphalt v. AFI y otros*, supra, pág. 819-820; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Batista, Nobbe v. Jta. Directores*, pág. 216.

Tal y como esbozamos previamente, los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que, estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *Hernández Feliciano v. Mun. Quebradillas*, 2023 TSPR 6, 211 DPR ___ (2023); *OEG v. Martínez Giraud*, 210 DPR 79, 87-89 (2022); *Pérez López v. Depto. Corrección*, 208 DPR 656, 672 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021) y otros. Es por ello que, tales determinaciones suponen una presunción de legalidad y corrección,

que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Íd.*

En el caso que nos ocupa la parte recurrente no nos ha puesto en posición de intervenir con la determinación recurrida, por lo que optamos por otorgarle deferencia a lo determinado por el ente administrativo.

**IV**

De conformidad a lo antes expuesto, se confirma la *Resolución* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones