ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| JOEL GONZÁLEZ RIVERA<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | **KLRA202500224** | *REVISIÓN ADMINISTRATIVA* procedente de Departamento de Corrección y Rehabilitación<br><br>Caso Núm.: GMA500-650-24<br><br>Sobre: Aplicación de la Ley 85-2022 |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 27 de mayo de 2025.

Comparece ante este foro el Sr. Joel González Rivera (señor González o "el recurrente"), por derecho propio y en forma *pauperis*, mediante el cual nos solicita que revisemos la *Respuesta al Miembro de la Población Correccional* emitida por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación de Puerto Rico (DCR o "parte recurrida"), notificada el 19 de febrero de 2025. Mediante el referido dictamen, el DCR determinó que la aplicación de la Ley Núm. 85-2022 no podía ser revertida sin una orden judicial o una enmienda a la Ley.

Por los fundamentos que expondremos a continuación, **CONFIRMAMOS** el dictamen recurrido.

### I.

Según surge del expediente, el 30 de noviembre de 2016, el señor González fue sentenciado a cumplir una pena consecutiva de 23 años, tras haber sido hallado

Número Identificador
SEN2025 _____

culpable por cometer infracciones al Art. 5.05 de la Ley de Armas y T. Art. 93(E)(2) del Código Penal.

El 27 de enero de 2021, el DCR le remitió al recurrente una *Hoja Control sobre Liquidación de Sentencia*.[1] La misma reflejaba que: (1) el 30 de noviembre de 2016, el señor González había comenzado a cumplir su sentencia; (2) que el 10 de octubre de 2019 cumplía el máximo de la sentencia por el Art. 5.05 e iniciaba el término para cumplir con la sentencia por el delito del Art. 93; y, (3) que el 10 de febrero de 2035, cumplía la pena máxima de la sentencia por el Art. 93.

El 14 de marzo de 2024, luego de la aprobación de la Ley Núm. 85-2022, el DCR le remitió una nueva *Hoja Control sobre Liquidación de Sentencia*, la cual fue firmada por el recurrente el 10 de mayo de 2024.[2] En esta, le notificaron que comenzó a cumplir sentencia por el Art. 93(E)(2) el 30 de noviembre de 2016 y cumpliría el máximo el 29 de agosto de 2034, y el mínimo el 29 de octubre de 2028, tras bonificaciones calculadas. Mientras que, la sentencia por el Art. 5.05 de la Ley de Armas, cumpliría la sentencia el 29 de agosto de 2034, tras bonificaciones.

En desacuerdo, el 27 de noviembre de 2024, el recurrente presentó una *Solicitud de Remedio Administrativo*.[3] Mediante la cual, solicitó que no le fuera aplicada la Ley Núm. 85-2022 debido a que no le beneficiaba.

---

[1] *Hoja Control sobre Liquidación de Sentencia*, pág. 1 del apéndice del recurso.
[2] *Hoja Control sobre Liquidación de Sentencia*, pág. 7 del apéndice del recurso.
[3] *Solicitud de Remedio Administrativo*, pág. 2 del apéndice del recurso.

El 21 de enero de 2025, el DCR emitió una *Respuesta al Miembro de la Población Correccional*,[4] en la cual indicaron:

> En contestación a su Remedio #GMA500-650-24, la aplicación de la Ley 85 es para todo MPC al cual le aplique la misma. A esta fecha se corrobora y la misma no puede ser revertida sin haber alguna orden judicial para tal acción, o existir alguna enmienda en dicha Ley.

En desacuerdo, el 17 de febrero de 2025, el señor González presentó una *Solicitud de Reconsideración*.[5] Alegó que, el 10 de octubre de 2019 había cumplido con la sentencia impuesta de 3 años por el Art. 5.05 de la Ley de Armas. Por ello, planteó que no era posible le aplicaran la Ley 85-2022, la cual había entrado en vigor 3 años después, y para dicha fecha ya estaba cumpliendo una sola sentencia. Por consiguiente, solicitó fuera corregida su *Hoja Control sobre Liquidación de Sentencia*, indicando que solo le faltaba una sola sentencia por cumplir.

El 2 de abril de 2025, el DCR notificó su *Respuesta de Reconsideración al Miembro de la Población Correccional*.[6] Mediante la cual, determinaron denegar la petición y expresaron lo siguiente:

> Luego de evaluar la Solicitud de Reconsideración se determinó modificar la contestación del Área del Récord.
>
> Sr. González Rivera, en su Solicitud de Remedio usted expresó su preocupación por el cumplimiento de sus sentencias. El caso fue discutido en el Área de Récord. Nos informaron que sus sentencias serán cumplidas de forma consecutiva. Incluimos copia de la Hoja de Control sobre Liquidación de Sentencia, documento que usted firmó el pasado 10 de mayo de 2024.

---

[4] *Respuesta al Miembro de la Población Correccional*, págs. 3-4 del apéndice del recurso.
[5] *Solicitud de Reconsideración*, pág. 5 del apéndice del recurso.
[6] *Respuesta de Reconsideración al Miembro de la Población Correccional*, pág. 6 del apéndice del recurso.

Inconforme, el 14 de abril de 2025, el recurrente instó el recurso que nos ocupa y formuló el siguiente señalamiento de error:

> Erró el personal de Récord Penal del D.C.R. Anexo Guayama 500, por aplicar la Ley al recurrente, ya [h]abiendo el recurrente extinguido la sentencia de tres (3) años.

El 7 de mayo de 2025 emitimos una *Resolución* en la cual le indicamos a la parte recurrida que tenían el término dispuesto en el Reglamento de este Foro para que presentaran su alegato.

Transcurrido el término sin su comparecencia, damos por perfeccionado el recurso y procederemos a atender la controversia. Veamos.

## II.

### -A-

El Artículo 4.006(c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico otorga la competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas. Ley Núm. 201-2003, 4 LPRA sec. 24y(c). Véase, además: *Autoridad de carreteras y Transportación v. Programa*, 210 DPR 897, 908 (2022); *Asoc. Condómines v. Meadows Dev.*, 190 DPR 843, 847 (2014). La revisión judicial de las decisiones administrativas tienen como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme a la ley y de forma razonable. *Unlimited v. Mun. de Guaynabo*, 183 DPR 947, 965 (2011); *Empresas Ferré v. ARPe*, 172 DPR 254, 264 (2007). Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes

delegados y si son compatibles con la política pública que las origina. *Rolón Martínez v. Caldero López*, 201 DPR 26, 35 (2018).

A esos efectos, la revisión judicial comprende tres aspectos: (1) la concesión del remedio apropiado, (2) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial y, (3) la revisión completa de las conclusiones de derecho. *Batista, Nobre v. Jta. Directores,* 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010); *Mun. de. San Juan v. JCA,* 149 DPR 263, 279-280 (1999).

Nuestro Tribunal Supremo ha reiterado que los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados. *Rolón Martínez v. Caldero López*, supra; *Asoc. Fcias. v. Caribe Specialty et al. II.,* supra, 940. De otra parte, nuestro más Alto Foro ha enfatizado que los tribunales, aplicando el criterio de razonabilidad y deferencia, no alterarán las determinaciones de hechos de las agencias, siempre que surja del expediente administrativo evidencia sustancial que las sustente. *Íd.*

Igualmente, las determinaciones de los entes administrativos tienen una presunción de legalidad y corrección que los tribunales deben respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas. *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 892 (2008). Por ello, los tribunales deben ser cautelosos al intervenir con las conclusiones

e interpretaciones de los organismos administrativos especializados. *Íd.*

Ahora bien, esta deferencia reconocida a las decisiones de las agencias administrativas cede en algunas situaciones: (1) cuando la decisión no esté basada en evidencia sustancial, (2) cuando la agencia haya errado en la aplicación de la ley, (3) cuando su actuación resulte ser arbitraria, irrazonable o ilegal y (4) cuando la actuación administrativa lesiona derechos constitucionales fundamentales. *Capote Rivera v. Voili Voila Corporation*, 213 DPR 743 (2024); *Super Asphalt Pavement, Corp. V. AFI y otros*, 206 DPR 803, 819 (2021); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012), citando a *Empresas Ferrer v. ARPe*, supra. No obstante, los tribunales revisores no intervendremos en las determinaciones de hechos siempre y cuando surja del expediente administrativo evidencia sustancial que las respalde. *The Sembler Co. v. Mun. De Carolina*, supra.

Asimismo, es necesario destacar que los dictámenes de las autoridades correccionales merecen gran deferencia. *Cruz Negrón v. Administración de Corrección*, 164 DPR 341, 357 (2005). Al respecto, el Tribunal Supremo de Puerto Rico ha expresado:

> Por lo general, la composición de estos comités la conforman peritos en el campo tales como técnicos socio penales y oficiales o consejeros correccionales. Estos profesionales cuentan con la capacidad, la preparación, el conocimiento y la experiencia necesarios para atender las necesidades de los confinados y realizar este tipo de evaluaciones. Por esta razón, una determinación formulada por el referido Comité debe ser sostenida por el foro judicial siempre que no sea arbitraria o caprichosa y esté fundamentada en evidencia sustancial. Es decir, siempre que la decisión sea razonable, cumpla con

el procedimiento establecido en las reglas y los manuales, y no altere los términos de la sentencia impuesta, el tribunal deberá confirmarla. *Íd.*, págs. 354-355.

A la luz de su conocimiento especializado, la determinación agencial merece deferencia sustancial aun cuando no sea la única razonable. *Torres Santiago v. Depto. Justicia,* 181 DPR 969, 1003 (2011). Esta normativa contempla que las instituciones correccionales "están en mejor posición para resolver las controversias surgidas en torno a los asuntos que le fueron encomendados por ley." *Cruz Negrón v. Administración de Corrección,* supra, págs. 355-356.

**-B-**

La Ley Núm. 85-2022 tiene como propósito principal enmendar el Artículo 308 del Código Penal de Puerto Rico, *supra*, y el Artículo 3 de la Ley de la Junta de Libertad Bajo Palabra, *supra*. La aludida pieza legislativa dispone en su *Exposición de Motivos* que la misma se aprobó como "una manera justa, retributiva y rehabilitadora, que le permita a aquella persona convicta por varios delitos el poder ser considerada para libertad bajo palabra al cumplir con los términos de la sentencia más onerosa relacionada directamente con alguno de los delitos por los cuales fue encontrado culpable." Esto, debido a que cuando se imponen sentencias consecutivas que pueden llegar a acumular cientos de años de cárcel, los reclusos se encuentran sometidos a cumplir una sentencia de por vida sin la posibilidad de ser considerado para los beneficios de libertad bajo palabra.

La Sección 1 de la Ley Núm. 85-2022 enmendó el Artículo 308 del Código Penal, para que lea como sigue:

Artículo 308. - Términos para cualificar para consideración de la Junta de Libertad Bajo Palabra.

Toda persona convicta bajo las disposiciones de este Código podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir el setenta y cinco por ciento (75%) del término de reclusión impuesto. Este cómputo nunca excederá de quince (15) años cuando se trate de un adulto o de cinco (5) años cuando se trate de un menor sentenciado y procesado como adulto en delitos para los cuales al realizarse el cómputo jurisdiccional para cualificar ante la consideración de la Junta de Libertad Bajo Palabra este sea mayor a lo requerido para delitos con pena fija señalada en el tipo de cincuenta (50) años.

En delitos graves cuyo término de reclusión señalada en el tipo sea de cincuenta (50) años, la persona podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir quince (15) años de su sentencia o cinco (5) años si se trata de un menor de edad procesado y sentenciado como adulto.

En caso de la persona convicta de asesinato en primer grado, un delito cuya pena sea de noventa y nueve (99) años o reincidencia habitual la persona podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra, al cumplir veinticinco (25) años de su sentencia, o diez (10) años, si se trata de un menor de edad procesado y sentenciado como adulto. Las personas convictas al amparo del inciso (c) del Artículo 93 estarán excluidas del privilegio de libertad bajo palabra.

En aquellos procesos judiciales en que se encuentre al acusado culpable por más de un delito y se le imponga una sentencia a ser cumplida de manera consecutiva, la persona convicta tendrá derecho a cualificar para libertad bajo palabra al cumplir con el término concerniente a la pena mayor recibida por alguno de los delitos cometidos. Cuando más de uno de los delitos cometidos conlleve la misma pena, la persona convicta cualificará para el beneficio de libertad bajo palabra con el mero hecho de haber cumplido con el término de una de ellas. Lo dispuesto en este párrafo será de aplicabilidad, independientemente si la Ley en virtud de la cual resulta convicto, sea una Ley Penal Especial. Sección 1 de la Ley Núm. 85-2022.

Por otro lado, la Sección 2 enmendó el Artículo 3 la Ley Núm. 118-1974, *supra*, estableciendo que en los procesos judiciales en que el acusado sea encontrado culpable por más de un delito y se le imponga una sentencia a ser cumplida consecutivamente, tendrá derecho a cualificar para Libertad Bajo Palabra al cumplir con el término concerniente de la pena mayor recibida por alguno de los delitos cometidos. Así pues, cuando más de uno de los delitos cometidos conlleve la misma pena, la persona convicta cualificará para el beneficio de libertad bajo palabra por el mero hecho de haber cumplido con el término de una de ellas. Esto independientemente se trate de una ley penal especial.

Por último, y en lo que respecta a la Sección 3 de la mencionada ley, se dispone lo siguiente:

> Esta Ley aplicará de manera retroactiva, independientemente del Código Penal o Ley Penal Especial vigente al momento de los hechos delictivos, siempre y cuando resulte favorable para la persona condenada. Las cláusulas de prohibiciones absolutas de libertad bajo palabra en los delitos de leyes penales especiales no serán aplicables al caso de menores juzgados y sentenciados como adultos cuando contravengan lo aquí establecido.

De otra parte, el 15 de junio de 2023, la Secretaria Auxiliar de Programas y Servicios del DCR emitió la Carta Circular Núm. 2023-02 (Carta Circular) en la que informó el procedimiento a seguir para computar los términos para referir a los confinados a la Junta de Libertad Bajo Palabra, de conformidad con la Ley Núm. 85-2022, *supra*. En esta, expuso que evaluarían todos los expedientes criminales de la población correccional con el fin de estudiar la *Hoja de Control sobre Liquidación de Sentencias* e identificar si había más de un término computado y determinar cuál es la sentencia base mayor.

Asimismo, expuso que tomarían la sentencia de manera individual, por lo que, las que fueran consecutivas no debían ser consolidadas en la nueva revisión. A razón de que, de estar consolidadas, el resultado conllevaría identificar una pena mayor que no necesariamente sería la correcta para el cómputo final a los fines requeridos por la ley. Siendo así, el DCR emitiría una nueva *Hoja de Control sobre Liquidación de Sentencias* titulada *Reliquidación*. En esta hoja se identificarían la pena mayor y se observará el mínimo de esa sentencia. Si el mínimo reflejado es mayor de 15 años, éste se ajustará a lo que establece la nueva Ley. Excepto, si se trata de una persona sentenciada por asesinato en primer grado, en el que el mínimo de sentencia será de 25 años naturales.

Además, la Carta Circular establece que todo delito cumplido en su totalidad será eliminado de la *Hoja de Control sobre Liquidación de Sentencias*. Por consiguiente, los demás términos de la sentencia se computarán en el mismo orden de la *Hoja de Liquidación* anterior y no se computarán mínimos adicionales. Por lo que, se considerará y documentará solamente un mínimo, el cual responderá a la pena mayor.[7]

No obstante, la Secretaria Auxiliar del DCR emitió las *Nuevas Directrices* sobre la Carta Circular Núm. 2023-02 de 11 de octubre de 2023,[8] en la cual implementó un nuevo esquema para computar el momento en que un confinado cumplía el mínimo de sentencia de la pena más

---

[7] *Véase*, Carta Circular 2023-02 del 15 de junio de 2023, pág. 3, inciso 4.
[8] *Véase*, Carta Circular Núm. 2023-02 del 11 de octubre de 2023, págs. 2-4.

larga para ser elegible para el privilegio de libertad bajo palabra. En específico, estableció lo siguiente:

1. Verificarán todos los expedientes criminales de toda la población correccional.

2. Evaluarán el documento titulado "Hoja de Control sobre Liquidación de Sentencias". De observar más de un término computado, identificarán la sentencia base mayor.

3. Tomarán en cuenta las sentencias de manera individual. Las sentencias que son consecutivas no deberán estar consolidadas en la nueva revisión. De estar consolidadas, el resultado conllevaría a identificar una pena mayor que no necesariamente sea la correcta para el cómputo final a los fines requeridos por la ley.

4. Los nuevos cómputos se harán en una nueva "Hoja de Control sobre Liquidación de Sentencia", la cual se identificará como una "Reliquidación".

5. Si la pena mayor resultara ser de un hecho ocurrido estando en una alternativa de reclusión, el término en el que comenzará a cumplir el mínimo de esa pena mayor se computará a partir del cumplimiento del remanente de la pena revocada.

6. **En virtud de lo anterior, en la nueva "Hoja de Control sobre Liquidación de Sentencia", identificarán la pena mayor y se observará el mínimo de esa sentencia.** En el caso de que el mínimo sea mayor de 15 años, se atemperará a 15 años, salvo en los casos sentenciados por asesinato en primer grado, que el mínimo será de 25 años naturales.

7. **Computarán en primer orden la pena mayor con el mínimo.** Cuando el mínimo de la pena mayor sea menor de 15 años, no se efectuará cómputo adicional. Solo se pondrá en primer orden.

8. Adjudicarán las bonificaciones adicionales al nuevo cómputo en el máximo y en el mínimo, exceptuando los casos de asesinato en primer grado, que solo bonifican en el máximo.

9. Si el delito de la pena mayor (primer orden) excluye las bonificaciones adicionales, no podrán ser acreditadas, aunque el confinado tenga tiempo adjudicado por concepto de trabajo y/o estudios.

10. Computarán los demás términos de las sentencias consecutivas en el mismo orden de la hoja de liquidación anterior y no se computarán mínimos adicionales.

11. Se considerará y documentará solamente un mínimo, el cual responderá a la pena mayor.

12. **Los delitos cumplidos en su totalidad permanecerán en la nueva "Hoja de Control sobre Liquidación de Sentencias". Por ejemplo, en los casos de asesinato en primer grado cometidos con armas, se computará en primer orden el asesinato en primer grado con el mínimo establecido, beneficiándolo del tiempo en reclusión preventiva. Luego, se incluirán y computarán los demás delitos de la sentencia, incluyendo los de armas. […].** (Énfasis nuestro).

### III.

El en caso de autos, el señor González alega que la aplicación de la Ley Núm. 85-2022 a su *Hoja de Control sobre Liquidación de Sentencias* emitida el 14 de marzo de 2024, no le favorecía. Sostiene que, le fueron invertidas las sentencias, comenzando a cumplir la sentencia de 20 años por la tentativa del Artículo 93(E)(2) para luego tener que cumplir los 3 años por Ley de Armas, cuando el 10 de octubre de 2019 extinguió la sentencia sobre el delito por la Ley de Armas. Así pues, nos solicita que ordenemos al DCR a que corrija la *Hoja de Control sobre Liquidación de Sentencias*, ya que no contiene la información correcta.

Conforme al ordenamiento jurídico antes expuesto, la Secretaria Auxiliar de Programas y Servicios del DCR emitió la *Carta Circular Núm. 2023-02* en la cual estableció el procedimiento a seguir para el cumplimiento de la Ley Núm. 85-2022, *supra*. Se desprendía de dicha *Carta* que, toda pena cumplida en su totalidad sería eliminada de la "*Hoja de Control sobre Liquidación de Sentencia*". No obstante, el 11 de octubre

de 2023, fue aprobada una enmienda a la *Carta Circular*, en la que se implementó un nuevo proceso para computar los términos en los que todo miembro de la población correccional sería elegible para el privilegio de libertad bajo palabra. En esencia, estableció que se debe computar en primer orden la pena mayor con el mínimo, además que, las penas cumplidas en su totalidad permanecerían en la *Hoja de Control Sobre Liquidación de Sentencias*.

Según se desprende del expediente, en la *Hoja de Control sobre Liquidación de Sentencias* del 27 de enero de 2021, detallaba en primera posición el delito por Ley de Armas y le seguía el delito por el Código Penal. Asimismo, reflejaba que: (1) el 30 de noviembre de 2016, el señor González había comenzado a cumplir su sentencia por Ley de Armas; (2) que el 10 de octubre de 2019 cumplía el máximo de dicha sentencia; (3) que el 10 de octubre de 2019 iniciaba el término máximo para cumplir con la sentencia por el delito de Tentativa del Art. 93; (3) que el 10 de febrero de 2035, cumplía la pena máxima de la sentencia por dicho delito; y (4) que el 10 de octubre de 2029 cumplía el mínimo.

Posterior a la aprobación de la Ley Núm. 85-2022, *supra*, el DCR emitió el 14 de marzo de 2024 una *Hoja de Control sobre Liquidación de Sentencias* donde ubicaron en primera posición el delito por la tentativa al Artículo 93(E)(2) del Código Penal y en segunda posición el Artículo 5.05 de Ley de Armas.

Además, desglosaron que: (1) el 30 de noviembre de 2016 había comenzado a cumplir la sentencia del Código Penal; (2) que el mínimo (único mínimo de la Hoja) de la sentencia por el Código Penal es el 29 de octubre de

2028, tras bonificaciones; (3) que el máximo de dicha sentencia es el 29 de agosto de 2034, tras bonificaciones; y (4) máximo de la sentencia por Ley de Armas es el 29 de agosto de 2034 tras bonificaciones calculadas. Asimismo el DCR especificó que dejaban sin efecto la liquidación anterior, puesto que, aplicaba la Ley Núm. 85-2022, *supra*.

Conforme a lo antes expuesto, el DCR cumplió con los requisitos exigidos en la Ley Núm. 85-2022, *supra*, y en la Carta Circular, *supra*. En la última *Hoja de Control sobre Liquidación de Sentencias* (1) identificaron la pena mayor y observaron el mínimo de dicha sentencia; (2) expresaron que dejaban sin efecto la liquidación anterior, por la aplicación de la Ley Núm. 85-2022; (3) consideraron y documentaron solamente el mínimo, correspondiente a la pena mayor; (4) incluyeron las bonificaciones al máximo y al mínimo; y (5) permaneció en la *Hoja*, el delito cumplido por la Ley de Armas.

Evaluado lo anterior, determinamos que la última *Hoja de Control sobre Liquidación de Sentencias* le resulta favorable al recurrente. En esta, no le están sumando la sentencia de la Ley de Armas nuevamente, debido a que, la sentencia por el delito del Código Penal se está contando desde la fecha en que inicialmente había comenzado a cumplir la sentencia por el Artículo 5.05 de la Ley de Armas, entiéndase desde el 30 de noviembre de 2016.

**IV.**

Por los fundamentos antes expuestos, **CONFIRMAMOS** el dictamen recurrido.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones